101 N.J. Super. 29 (1968)
242 A.2d 880
RONALD RUDIKOFF, PLAINTIFF,
v.
EDWARD J. BYRNE, MICHAEL FOGLIO AND MARY R. FOGLIO, INDIVIDUALLY, SEVERALLY AND JOINTLY, DEFENDANTS.
Superior Court of New Jersey, Law Division.
Decided May 6, 1968.
*30 Mr. Allan J. Naishuler for plaintiff (Messrs. Greenstone and Greenstone, attorneys).
Mr. Joseph T. Ryan for defendant Edward J. Byrne, (Messrs. Lamb, Blake, Hutchinson & Dunne, attorneys).
LYNCH, J.S.C.
The novel issue raised here is whether, under the circumstances of this case, an insured nonresident automobile operator, involved in an accident in New Jersey, may be served with process by service upon his insurance carrier, by registered mail sent to the carrier at its New York office. Service upon defendant Byrne had been attempted by the typical method under the nonresident motorists statute N.J.S.A. 39:7-1 et seq. However, when the Director of Motor Vehicles, pursuant to N.J.S.A. 39:7-3, forwarded the summons and complaint to the address of defendant listed on his New York driver's license and registration at the time of the accident, it was returned "Unclaimed." Defendant had moved from said address without advising the Department of Motor Vehicles of the State of New York of his change of address as required by New York Vehicle and Traffic Law, McKinney's Consol. Laws, c 71, § *31 501(g). Despite diligent inquiry, defendant's whereabouts are unknown and plaintiff, conceiving he knew of no other way to effect service of process, served defendant's insurance carrier in the manner described above.
The accident out of which the suit arises occurred in Hoboken, New Jersey, on May 4, 1963, when an automobile driven by defendant Edward Byrne (Bryne), in which plaintiff and one John Evard were passengers, collided with a vehicle owned by defendant Mary R. Foglio and driven by defandant Michael Foglio. At the time of the accident Byrne resided at 5505 - 5th Avenue, Brooklyn, New York. This was the address which he gave to police at the scene and which appeared on his New York operator's license and registration certificate. It was at that address that Byrne was served by certified mail on March 7, 1964, under N.J.S.A. 39:7-3, in a suit started against him in this State by Mr. and Mrs. Foglio. It was also the address stated in the answer filed on Byrne's behalf in the Foglio suit by the same attorneys who now make the instant motion on his behalf.
For almost two years after the accident plaintiff's New York attorney, Edward Vogel, carried on settlement negotiations with Byrne's liability insurance carrier, Merchants Mutual Insurance Company. That same carrier has settled, on Byrne's behalf, the claims brought against him by the Foglios and the other passenger in his car, John Evard. In an affidavit filed in opposition to defendant's motion here, Vogel details the nature of the negotiations in his unsuccessful effort to settle the claim of the instant plaintiff, Rudikoff. They were typical of the ordinary dealings between a plaintiff's attorney and defendant's carrier. He dealt with one Mazzella, an adjuster, who advised him that the company file number on the case was 2-265318 and that he would receive a request from the carrier's doctors for a physical examination of plaintiff. Such examinations on the carrier's behalf were held on October 24 and November 26, 1963. Vogel had many discussions with Mazzella from June 1963 to December of that year when Mazzella requested a further physical *32 examination of plaintiff by a specialist, Dr. J.A. Kapland, of New York City. That examination took place on January 25, 1964. Vogel also authorized Dr. Kapland to examine X-rays of plaintiff which were at the hospital where he had been treated and also others in the possession of plaintiff's physician. Attached to Vogel's affidavit herein are copies of letters dated April 20 and 28, May 1 and 5, July 17 and 27, 1964 relating to special damages, including medical expenses incurred, name of plaintiff's employer and wages lost as a result of the accident. Vogel continued to negotiate with Mazzella through the year 1964 and was then asked to deal with his supervisor, one Videlli. Finally, on January 12, 1965 Mazzella offered $2500 plus medical expenses in settlement. Vogel considered the offer insufficient and in February 1965 was advised that it would not be increased. Negotiations then discontinued.
During the period of the negotiations from June 1963 to February 1965, Vogel refrained from instituting suit on behalf of his client because, he avers, he was confident the case would be settled. He likewise felt that Byrne would remain available for service, under the Motor Vehicle Act of this State, at the same address at which he had acknowledged receipt of the summons and complaint in the case of Foglio v. Byrne. Under the impression that Byrne still resided at the said address, plaintiff's New Jersey attorney issued summons herein on May 10, 1965 and advised the Director of Motor Vehicles of this State that Byrne could be served there, with the abortive result described above. Thereafter, for almost two years, efforts to locate the whereabouts of Byrne proved unsuccessful.
In October 1967, knowing of no other method of serving Byrne, so it is said, process was sent by registered mail, return receipt requested, to Byrne in care of his insurance carrier. The carrier signed for same. Default having been entered against Byrne, the attorneys selected by the carrier and who represented Byrne in the Foglio suit, move to vacate the default and to set aside the purported service.
*33 Defendant's sole argument is that R.R. 4:4-4 et seq. does not provide for service on an individual by sending a copy of the summons and complaint to his insurance company, as was done here. It is true that no provision of our rules expressly permits service upon an insured by serving his insurance carrier, and there is no judicial precedent for it in our State. Plaintiff, on the other hand, argues that because defendant had moved from the address given to the Motor Vehicle Department of New York without advising change of address, he should be estopped from objecting to the service here made.
Even if the court were to hold that defendant is estopped from denying the given address as his own, it does not follow that the kind of service here attempted is necessarily valid. There must be some provision of our rules which authorizes the service attempted. Carlin v. Schuler, 89 N.J. Super. 366 (Law Div. 1965); Driscoll v. Burlington-Bristol Bridge Co., 8 N.J. 433 (1952); Levitt v. Colonial Boat Works, Inc., 70 N.J. Super. 555 (Law Div. 1961). Further, the service must be "consistent with due process of law." It is to these two questions that we direct our attention.
R.R. 4:4-4(j) was adopted in 1963. It reads as follows:
"(j) Whenever it shall appear by affidavit of the attorney for the plaintiff or of any person having knowledge of the facts, that, after diligent inquiry and effort, an individual cannot be served in this State under any of the preceding paragraphs of this rule, then, consistent with due process of law, service may be made by mailing, registered mail, return receipt requested, a copy of the summons and complaint to the individual addressed to his dwelling house or usual place of abode. Where service is attempted to be made by registered mail but the same is not effected, either by reason of the addressee refusing to accept delivery or if for any reason delivery cannot be made, then service may be made outside the State as provided in Rule 4:4-5(a) upon any person upon whom service is authorized by the law of this State or of the state wherein service is effected."
It is clear, as appears by plaintiff's affidavits, that "after diligent inquiry and effort" defendant Byrne could not be *34 served in this State under any of the methods provided in the paragraphs of the rule preceding paragraph (j). But the method provided by the first sentence of the rule was not here complied with, for a copy of the summons and complaint was not sent to Byrne "addressed to his dwelling house or usual place of abode." R.R. 4:4-4(j) provides that when the attempt to serve by registered mail is unsuccessful and for any reason delivery cannot be made, "then service may be made outside the State as provided in Rule 4:4-5(a) upon any person upon whom service is authorized by the law of this State or of the state wherein service is effected." (Emphasis added). Service here was made in New York upon defendant's insurer. Was this a "person upon whom service is authorized by the law" of the State of New York?
The question as to the validity of service upon an insured's carrier has received judicial attention in a series of cases in the State of New York, culminating in the recent decision of the Court of Appeals in the cases of Dobkin v. Chapman, Sellars v. Raye and Keller v. Rappoport,[1] 21 N.Y.2d 490, 289 N.Y.S.2d 161, 236 N.E.2d 451. Prior to that decision such service had been held valid under CPLR 308(4) in West v. Mannino (Sup. Ct. 1967) Vol. 157, No. 64 N.Y. L.J., p. 21, col. 7; Keller v. Rappoport (Sup. Ct. 1966) Vol. 155, No. 38 N.Y.L.J., p. 19, col. 5; Zuretti v. Cotto (Sup. Ct. 1967) Vol. 157, No. 9 N.Y.L.J., p. 15, col. 7; Robles v. Yacano (Sup. Ct. 1967) Vol. 157, No. 22 N.Y.L.J., p. 19, col. 7; and Lerman v. Church, 54 Misc.2d 402, 282 N.Y.S.2d 622 (Sup. Ct. 1967).
In Zuretti and Robles, the courts, in sustaining the service, found significant the fact that the insurance carriers involved had undertaken investigations of the cases, had medical *35 examinations of the plaintiff and carried on negotiations, and other facts from which it was obvious that the insurance company was "aware of the accident all along." However, in Winterstein v. Pollard, 50 Misc.2d 354, 270 N.Y.S.2d 525 (Sup. Ct. 1966), the court refused to approve said service, holding that there was no showing of identity of interests between the assured and insurer nor an actual relationship between them, and therefore it could not be said, according to the court, that "notice to the insurer is reasonably calculated to give notice to the defendant." In Lerman v. Church, supra, Justice Geller, while citing Winterstein in recognition of the rule that there must be a showing of actual relationship between defendant insured and his insurer, nevertheless held, in the case before him, that such a showing was made. The process server had attempted to serve defendant at the address given in the motor vehicle report and where defendant had been served on an earlier occasion in a suit arising out of the same accident, but instituted by a different claimant. Defendant had moved and could not be found. Further, plaintiff's attorney had negotiated with an adjuster for the carrier, forwarded papers by letter showing the carrier's file number and discussed settlement. In Lerman the court therefore held that the service upon the insurer was valid.
The issue was finally put to rest in the State of New York when the Court of Appeals, in Keller v. Rappoport, supra, upheld service upon the insurance carrier. In each of the three cases involved in that opinion, Dobkin, Sellars and Keller, appellants contended that the mode of service employed was unauthorized by the statute (CPLR 308 (4))[2] and that the *36 service violated the requirements of due process. The Court of Appeals found no merit in either contention.
In Keller the Court of Appeals affirmed issuance of an order of the Supreme Court of that state which authorized service (1) by mailing a copy of the summons and complaint to the defendant's last-known address, and (2) by delivering copies thereof to the defendant's insurance carrier. Thus, such service as provided in the order described "is authorized by the law * * * of the state wherein service is effected," within the meaning of our rule, R.R. 4:4-4(j). Again, however, the same rule provides that service as therein authorized outside this State shall be made "as provided in Rule 4:4-5 (a)." The latter rule provides that, when service is made in another state, it may be done:
"* * * in the same manner as if service were made within the State, except that service shall be made by a sheriff, constable, bailiff or other officer having like authority in the jurisdiction wherein the service is made or by a person duly qualified to practice law in this State or the jurisdiction wherein service is made or by a person specially appointed by the court for that purpose, * * *."
Since the method of service here in question consisted in sending the papers to the insurance carrier by registered mail and was not made by any of the persons described in R.R. 4:4-5 (a), the service here was not within our rules, and is invalid. It follows that it must be set aside and the default judgment heretofore ordered is vacated.
*37 It may appear that the court, having found service invalid for noncompliance with our rules, need not reach the question as to whether service on an insured's carrier is "consistent with due process of law" if R.R. 4:4-4(j) and R.R. 4:4-5(a) had been complied with. However, the court feels that justice dictates that plaintiff should not be deprived of his right to prosecute this action, nor should defendant be advantaged by his dereliction and evasion of process in his failure to advise the New York authorities of his change of address, as he was required to do by law. Therefore, as will be seen below, plaintiff will be given further opportunity to serve defendant by service upon his insurance carrier provided he complies with R.R. 4:4-4 (j) and R.R. 4:4-5(a). Consequently, the constitutional issue must be considered.
Principles of equitable estoppel should preclude defendant from taking advantage of his own acts in violation of of a legal duty. In State by Parsons v. United States Steel Corp., 22 N.J. 341 (1956), the general rule was stated as follows:
"`Equitable estoppel in the modern sense arises from the conduct of a party, using that word in its broadest meaning as including his spoken or written words, his positive acts, and his silence or negative omission to do anything. Its foundation is justice and good conscience. Its object is to prevent the unconscientious and inequitable assertion or enforcement of claims or rights which might have existed or been enforceable by other rules of the law, unless prevented by the estoppel; and its practical effect is, from motives of equity and fair dealing, to create and vest opposing rights in the party who obtains the benefit of the estoppel.' 3 Pomeroy on Equity Jurisprudence (5th ed. 1941), sec. 802." (at p. 358)
At page 356 Mr. Justice Burling, speaking for the Supreme Court, referred to Noel v. Teffeau, 116 N.J. Eq. 446 (Ch. 1934). In Noel, Vice-Chancellor Bigelow held that a defendant was estopped from pleading the statute of limitations where he had concealed his involvement in the automobile accident in which plaintiff was injured. The court found that defendant was knowingly involved in the accident and failed *38 to stop and give his name, address, operator's license and registered number to the person injured, in violation of the Motor Vehicle Act, section 14(4), as amended, L. 1926, C. 254, that it was this conduct of defendant which deprived plaintiff of the ability to bring the action within two years after the accident because he was ignorant of the identity of the person driving the automobile which struck him. The court quoted from Howard v. West Jersey and Seashore Railway Co., 102 N.J. Eq. 517 (Ch. 1928) as follows:
"`* * * Also it should be noted that, while the doctrine of estoppel in pais rests upon the ground of fraud, it is not essential that the representations or conduct giving rise to its application, should be fraudulent in the strictly legal significance of that term, or with intent to mislead or deceive; the test appears to be whether in all the circumstances of the case conscience and duty of honest dealing should deny one the right to repudiate the consequences of his representations or conduct; * * * fraud, in the sense of a court of equity, properly including all acts, omissions and concealments which involve a breach of legal or equitable duty, trust, or confidence, justly reposed, and are injurious to another, or by which an undue and unconscientious advantage is taken of another.'" (Emphasis added)
Applying the suggested test to this case, the court is of the opinion that "conscience and duty of honest dealing should deny" this defendant the right to repudiate the consequences of his conduct in leaving his original address without advising the New York authorities of a change of address  a "breach of * * * legal duty." And so it was held in Greenwood v. White, 25 A.D.2d 73, 266 N.Y.S.2d 1012 (App. Div. 1966), that a defendant nonresident motorist, who at the time of accident gave the sheriff an improper Florida address, was estopped from claiming that plaintiff's service of summons on him was insufficient to confer jurisdiction because no return postal receipt was filed, and the mailing was returned to plaintiff with a notation "No such address" "Unknown." "In such a setting," said the court, "a claim of deprivation of due process would seem misplaced."
*39 To the end, therefore, of affording plaintiff the opportunity to prosecute this action, the court here grants defendant's motions on terms, i.e., that plaintiff have an opportunity to serve defendant's insurance carrier in the manner set forth in R.R. 4:4-4(j) and R.R. 4:4-5(a). Necessarily implied in that direction is a consideration of the question as to whether such service is "consistent with due process of law."
In Keller v. Rappoport, supra, it was the contention of the insurance carrier's attorneys that the procedure used there fell short of due process because the methods provided did not give defendant actual notice of the action against him, his address being unknown. In deciding that due process was satisfied the Court of Appeals held that the constitutional standard does not require certainty that defendant would in fact receive notice of the suit. Chief Judge Fuld quoted from Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950), to the effect that "it has been recognized that, in the case of persons missing or unknown, employment of an indirect and even a probably futile means of notification is all that the situation permits" and does not render the services unconstitutional. See also Walker v. City of Hutchinson, 352 U.S. 112, 115, 116, 77 S.Ct. 200, 202, 1 L.Ed.2d 178 (1956), where the Supreme Court, referring to its prior decision in Mullane, said: "We recognize that in some cases it might not be reasonably possible to give personal notice, for example where people are missing or unknown."
In weighing the constitutional question, Keller held that due process is a matter of "balance," considering several factors: (1) the plaintiff's need, (2) the public interest, (3) the reasonableness of the plaintiff's efforts to inform the defendant, and (4) the availability of other safeguards for the defendant's interests. Finding all factors clearly present, the court held that the notice given in all the three cases involved was within constitutional standards, saying: *40 "It may not, in any event, be said that the kind of notice given under the ex parte orders in these cases was entirely meaningless or that it was not  to cull from Mullane (339 U.S. 306, 314, 70 S.Ct. 652 supra)  `reasonably calculated, under all the circumstances, to apprise' the defendants of the actions brought against them. * * * In Keller, where the defendant was insured, notice went not only to such last adress but to his insurance carrier as well. These are all places at which a defendant, who was properly curious about the legal consequences of the accident in which he had been involved, and not intent on avoiding service, might well begin his inquiries for mail or other notice. The probabilities of actual notice reaching the defendants in the case before us are not less, and are probably greater, than in the many types of cases in which reliance has, traditionally, been placed on publication (see, supra, pp. 502-503, [289 N.Y.S.2d pp. 170-172, 236 N.E.2d 457-459]). Indeed, in affirming Sellars, we give weight to the mailed notice; the single publication in a newspaper added little of value."
Applying the four factors suggested in Keller, we, too, find them satisfied in this case. Plaintiff's need here is obvious. He should have an opportunity to seek recompense for his injuries and to call upon defendant's insurer to fulfill its obligation under the policy as it did on the claims of Foglio and Evard. If it be said that the company may disclaim for lack of cooperation, that is a matter for another suit at another time. If the company prevails, plaintiff would have recourse under our Unsatisfied Claim and Judgment Fund Act (N.J.S.A. 39:6-65). The public interest is likewise apparent. The policy of our State to compel nonresidents to remain subject to suit here is evident in the provision for service upon them under N.J.S.A. 39:7-1 et seq., and our State's reliance on the registered address of the driver in his own state. The policy of our State to provide a source of recovery for injured plaintiffs is clearly established under the provisions of our Unsatisfied Claim and Judgment Fund. As to the third element, clearly it is not plaintiff's fault that defendant has escaped service. That is due to the latter's failure to fulfill his legal obligation, to advise authorities of New York of his change of address. Like defendant in Keller, he could have protected himself against failure to get actual notice by giving notice of change of address, and he could *41 keep in touch with his insurance carrier or he could have kept in touch with the injured plaintiff. Again, as said in Keller:
"Due process does not require that defendants derive any advantage from the sedulous avoidance of any of these measures. Indeed in an automobile case, no defendant need be without notice unless he chooses and wants to be; many an injured plaintiff, however, will go without recompense if, in a proper case, the standards of informative notice may not be relaxed."
Thus, the fourth factor in Keller  the availability of other safeguards for the defendant's interests  was present here. Defendant could have assured himself of getting actual notice of the suit if he had followed the steps suggested in Keller. The court holds that, under the circumstances of this case, service upon defendant's insurance carrier is "consistent with due process of law," leaving only plaintiff's obligation to make such service in accordance with R.R. 4:4-4(j) and R.R. 4:4-5(a).
The court is not unmindful of the decision in Zander v. Martine, 66 N.J. Super. 310 (Cty. Ct. 1961), where it was held that the court lacked jurisdiction over a nonresident motorist where letters of notification containing summons and complaint sent to defendant by the Director of Motor Vehicles were returned marked "moved, left no address." The court there held that since N.J.S.A. 39:7-3(b) required that defendant receipt for the said notification, it was the intent of the statute that the notice "actually be received" by defendant.
We also note that the court in Zander, cited Wuchter v. Pizzutti, 276 U.S. 13, 48 S.Ct. 259, 72 L.Ed. 446 (1928), which held that an earlier statute of this State providing for service on nonresident drivers was unconstitutional because the statute contained no direction for the process to be forwarded to the non-resident. Wuchter merely held that the statutory scheme there set up was itself unconstitutional. It did not hold that actual notice must be assured by the statutory *42 scheme but merely that it should contain a provision making it "reasonably probable" that notice be communicated to the nonresident defendant. That is all that is required. Where it is not reasonably possible to give actual notice  where persons are missing or unknown  actual notice is not required and indirect notice is sufficient. See Mullane v. Central Hanover Bank & Trust Co., supra, 339 U.S., at p. 317, 70 S.Ct. 652; Walker v. City of Hutchinson, supra, 352 U.S. at pp. 112, 113, 115, 77 S.Ct. 200. As Keller holds, under the circumstances that test is satisfied here.
Further, though Zander held that the nonresident motorists statute requires actual notice, service upon a nonresident motorist is not limited to the method prescribed in that act. The statute itself provides: "This chapter shall be construed as extending the right and manner of service of process upon nonresidents, and not as limiting any other lawful manner for such service." N.J.S.A. 39:7-1. Such other "lawful manner"  consistent with due process  is, in this court's view, available to plaintiff by service upon defendant's insurance carrier, provided R.R. 4:4-4(j) and R.R. 4:4-5(a) are complied with.
The order quashing the service and vacating the default judgment herein will also provide that plaintiff shall have a period of 30 days from the date thereof to effect service upon defendant by (1) mailing a copy of the summons and complaint, by registered mail, to defendant at his last-known address, and (2) by delivering copies thereof to defendant's insurance carrier in New York, but in the manner provided by R.R. 4:4-5(a).
NOTES
[1] These three cases were treated in one opinion by Chief Judge Fuld. Since Keller v. Rappoport involved service on defendant's insurance carrier, and Dodkin and Sellars were cases of uninsured drivers where service on the Motor Vehicle Accident Indemnification Corporation and the Secretary of State were sustained, we shall hereafter refer to the decision as Keller v. Rappoport.
[2] CPLR 308(4) reads in full as follows:

"Personal service upon a natural person shall be made:
1. by delivering the summons within the state to the person to be served; or
2. except in matrimonial actions by delivering the summons within the state to the agent for service designated under rule 318 of the person to be served; or
3. where service under paragraph one cannot be made with due diligence, by mailing the summons to the person to be served at his last known residence and either affixing the summons to the door of his place of business, dwelling house or usual place of abode within the state or delivering the summons within the state to a person of suitable age and discretion at the place of business, dwelling house or usual place of abode of the person to be served and proof of such service shall be filed with the clerk of the court designated in the summons and service is complete ten days thereafter; or
4. in such manner as the court, upon motion without notice, directs, if service is impracticable under paragraph one, two or three of this section."