**Joyce Greer CRESPO**

**v.**

**The UNITED STATES.**

**No. 150-66.**

United States Court of Claims.

July 17, 1968.

Jules C. Korner, III, Washington, D. C., attorney of record, for plaintiff; Korner, Doyle, Worth & Crampton, Washington, D. C., of counsel.

E. Alan Moorhouse, Washington, D. C., with whom was Asst. Atty. Gen. Mitchell Rogovin, for defendant.

### ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Before COWEN, Chief Judge, and LARAMORE, DURFEE, DAVIS, COLLINS, SKELTON and NICHOLS Judges.

COWEN, Chief Judge.

This is a suit for refund of federal income taxes. The issues are before us on plaintiff's motion for summary judgment. The facts are quite simple and may be briefly summarized.

Plaintiff is a citizen of the United States. For the taxable year in question, 1964, she was a resident of Spain and the wife of a Spanish citizen. During 1964 she worked in Madrid as a secretary with the Joint United States Military Group, an agency of the United States Government. She also received some compensation for services performed in Spain for

Tulane University, and interest from a savings account in a building and loan association located in Philadelphia, Pennsylvania. Her husband received a salary from the Spanish government and derived further income from apartment rentals and from disability compensation.

During 1964 federal income tax was withheld from plaintiff's salary in the amount of $737.40. She filed a return for 1964 showing a tax liability of $510.-60 and a refund due her of $226.60; this refund was duly paid. On December 23, 1965, plaintiff filed a claim for refund seeking the return to her of the entire amount of tax paid by her in 1964 and not refunded, i. e., $510.60, on the ground that none of her salary nor the interest paid her was taxable income to her. On March 11, 1966, the Commissioner of Internal Revenue denied the claim for refund, and this suit followed.

Plaintiff alleges that her tax liability for the year 1964 is governed by the law of her domicile, which is Spain; that under Spanish law, all her earnings during the taxable year were community income, and that the Internal Revenue Service, in applicable rulings, determined that all of her income was taxable to her husband alone.

■ The Internal Revenue Code of 1954 prescribes that the kind of income earned by plaintiff in 1964 is taxable when received by a cash basis taxpayer, but local law (in this case the law of Spain) must determine whether plaintiff acquired such rights in that income that it can be said that she "received" it within the meaning of the Internal Revenue Code, Poe v. Seaborn, 282 U.S. 101, 51 S.Ct. 58, 75 L.Ed. 239 (1930).

■ Although the law of a foreign jurisdiction may be proved as a fact, it is the function of the court and not that of a jury to determine the state of the foreign law from the proof presented on the issue. Liechti v. Roche, 198 F.2d 174 (5th Cir. 1952); Jansson v. Swedish American Line, 185 F.2d 212 (1st Cir. 1950).[1]

Plaintiff's motion is supported by the depositions of her husband and herself and by the affidavit of a Spanish attorney, which establish that all of the income earned by plaintiff in 1964 constitutes community property under Spanish law. In addition, plaintiff has attached to her motion and relies upon copies of rulings of the Internal Revenue Service, particularly I.T. 1513, I–2 Cum. Bull. 149 (1922), which reads as follows:

> Inasmuch as under the laws of Spain the wife's interest in community property, prior to liquidation, is an interest inchoate, a mere expectancy, the income of a nonresident alien, residing in Spain, derived from a partnership engaged in business in the United States should be returned in its entirety by the nonresident alien husband.

For many years, the Internal Revenue Service treated this ruling as applicable to the facts of this case. Such treatment is manifested not only by the 1968 revocation of the ruling, hereinafter discussed, but by related published rulings quoted in plaintiff's brief.[2] In I.T. 1513, the defendant determined that under Spanish law, the wife has no vested interest in community income or property prior to its liquidation and states that the income "should be returned in its entirety by the nonresident alien husband." If this is so, then none of plaintiff's 1964 income should have been returned by her and, to the extent that plaintiff in this case returned such in-

---

1. See also Fed.R.Civ. p. 44.1, effective July 1, 1966, which provides that the court's determination shall be treated as a ruling on a question of law.

2. See I.T. 1297, I–1 Cum.Bull. 235 (1922) respecting income constituting community property of a husband and wife who were American citizens but were residents of the Philippines. I.T. 1479, I–2 Cum.Bull. 172 (1922), respecting income constituting community property in Cuba, and I.T. 3916, 1948–2 Cum.Bull. 51, which revoked I.T. 1297 with respect to community property income in the Philippines but expressly left unchanged I.T. 1513, relating to Spain.

come and paid a tax thereon, she has overpaid and is entitled to a refund.

Defendant's sole opposition to the depositions, affidavit, and rulings accompanying plaintiff's motion is based upon a new ruling, Rev.Rul. 68–81, 1968 Int. Rev.Bull., No. 8, p. 6, which expressly revokes I.T. 1513 and provides in pertinent part:

[T]he ultimate determination of the amount taxable is dependent upon the resolution of the nature of the interest of a husband and wife in community property under the laws of Spain. A study of current authorities on the subject and an analysis of cases in related areas supports the position that each spouse, under the Community Property Law of Spain, has a present vested interest in one-half of the community property, including the income earned by each.

Accordingly * * * one-half of the income received from the United States Government by a Federal employee who is a citizen of the United States domiciled in Spain and who is the wife of a Spanish citizen * * * is taxable to her on a separate return in the absence of an election under section 981(a) of the Code * * *.

I.T. 1513 is hereby revoked.

The new ruling was issued on February 19, 1968, nearly 2 years after plaintiff filed this suit and over 2 months after the filing of plaintiff's motion for summary judgment. The question is whether this new ruling applies retroactively to the extent that it covers the income earned by plaintiff in 1964.

The ruling itself contains no statement that it is to be applied retroactively. Militating strongly against retroactive application is Section 13.09 of Rev.Proc. 67–1, 1967–1 Cum.Bull. 544, 554, which provides that "Revenue Rulings published in the Internal Revenue Bulletin ordinarily are not revoked or modified retroactively." Against this, defendant cites only a sentence from the Introduction which appears on page 1 of all the Cumulative Bulletins from 1957–1 to the present: "Except where otherwise indicated, published rulings and procedures apply retroactively."[3] We need not and do not determine what weight should be given the introductory statement under other circumstances. However, in view of the fact that I.T. 1513 remained in effect for a period of 46 years and in the light of the history of related rulings issued during that period of time, we find that a retroactive revocation of the ruling in 1968 would have been an extraordinary act of the kind referred to in Rev.Proc. 67–1, § 13.09. Therefore, since Rev.Ruling 68–81 did not expressly provide that it should apply retroactively, we hold that it was prospective in its application, that I.T. 1513 was in full force and effect during the taxable year 1964, and that upon the record before us, it is controlling with respect to the income earned by plaintiff in that year.

Defendant has argued that the Commissioner may not be estopped from applying the new ruling retroactively unless plaintiff can show she actually relied on the old ruling in conducting her affairs, citing Bornstein v. United States, 345 F.2d 558, 563, 170 Ct.Cl. 576, 583 (1965), and Knetsch v. United States, 348 F.2d 932, 940, 172 Ct.Cl. 378, 390 (1965), cert. den., 383 U.S. 957, 86 S.Ct. 1221, 16 L.Ed.2d 300 (1966). Defendant also points out that it is always open to the Commissioner to correct a mistake of law retroactively, citing Dixon v. United States, 381 U.S. 68, 73, 85 S.Ct. 1301, 14 L.Ed.2d 223 (1965), and Bornstein v. United States, supra.

The cited cases are inapposite. *Bornstein* and *Knetsch* involved situations in which the Commissioner of Internal Revenue retroactively changed the position he had taken in incorrect private rulings

---

3. The statement of policy now found in Rev.Proc. 67–1, § 13.09, antedates this introductory sentence by many years. For example, it was to be found, in slightly different wording, in Rev.Rul. 54–172, § 12.06, 1954–1 Cum.Bull. 394, 401, which was current in 1957 when the introductory sentence first appeared.

given to other taxpayers similarly situated. In *Dixon,* the Commissioner's withdrawal of his acquiescence in a related Tax Court decision was expressly declared a retroactive withdrawal. Since we have found that there was no retroactive revocation of I.T. 1513, we are not called upon to consider the legal questions presented in the cases relied upon by defendant.

It is apparent from what is said above that no factual issues remain to be disposed of in this case. Restricting our decision to the materials presented with plaintiff's motion and the opposition thereto, we are not required to make an independent or additional determination of the state of the Spanish law. On the basis of I.T. 1513 and the affidavit and depositions submitted by plaintiff, we hold that plaintiff was not required to report or pay income taxes on the salary and interest she was paid during the year 1964. Accordingly, plaintiff's motion for summary judgment is granted and judgment is entered for her in the amount of five hundred ten dollars and sixty cents ($510.60), plus interest thereon as provided by law.