**Hayim KALMICH, Plaintiff,**

v.

**Karl BRUNO, Defendant.**

**No. 74 C 3187.**

United States District Court,
N. D. Illinois, E. D.

Oct. 14, 1975.

Norman A. Handelsman, Layfer, Cohen, Handelsman & Mora, Ltd., Chicago, Ill., for plaintiff.

Lester E. Munson, Sr., Smith & Munson, Ltd., Chicago, Ill., for defendant.

## MEMORANDUM OPINION AND ORDER

FLAUM, District Judge:

This is an action for damages arising from the allegedly tortious seizure of the plaintiff's textile business in Belgrade, Yugoslavia in 1942. The plaintiff invokes this court's diversity jurisdiction pleading that he is a citizen of Quebec, Canada and the defendant, Karl Bruno, is a citizen of the state of Illinois. [28 U.S.C. § 1332.] This cause of action is based on a Yugoslavian statute entitled "Law Concerning the Treatment of Property . . . Taken Away From the Owner by the Enemy or its Helpers" which created a civil cause of action for persons whose property was confiscated by the German occupation forces during World War II.

The complaint alleges that in June of 1941, the Field Commander of the German Army in Belgrade issued orders for the seizure of the plaintiff's business to effectuate a general program of confiscation of the Jewish-owned industries of occupied territories. The plaintiff in this cause, Hayim Kalmich, owned a textile business in Belgrade which was allegedly seized by the defendant Bruno in his capacity as a subordinate to the General Plenipotentiary for the Economy of Serbia. The complaint alleges that from June of 1941 until March of 1942, the defendant served as an administrator (Kommisar Leiter) of the plaintiff's business. Thereafter, the defendant allegedly converted and appropriated the plaintiff's business for his own personal use and possession by acquiring it from one Karl Foerster, another official of the General Plenipotentiary for the Economy in Serbia, at less than its actual value. The complaint also alleges that the sole reason for the seizure and confiscation of the plaintiff's business was his religious beliefs and not military purpose or necessity. Subsequent to these events, the defendant allegedly left Yugoslavia and he was located by the plaintiff in this state in 1972.

Four Yugoslavian statutes provide the basis for the cause of action plaintiff seeks to assert in this federal forum. As an analysis of these statutes is critical for the resolution of the pending motions, they are set forth verbatim as pleaded in the complaint.

¶19. That at a time unknown to the Plaintiff but after the termination of World War II the nation of Yugoslavia enacted Article 125 of its Criminal Code which provides that anyone who confiscated belongings of another, during World War II, for non-military purposes, would be subject to criminal prosecution.

¶20. That in 1965, the nation of Yugoslavia enacted Article 134(a) of its Criminal Code which provides that there shall be no statute of limitations upon the prosecutions of violations of Article 125.

¶21. That on or about August 16, 1946 Section 1 of the "Law Concerning the Treatment of Property . . . Taken Away From the Owner by the Enemy or its Helpers" be-

came effective in Yugoslavia, said law providing a civil cause of action for those whose belongings were confiscated by the German occupation force.

¶22. That, in 1953, Section 20 of the Yugoslavian Statute of Limitations, as amended, became effective, said section providing that the statute of limitations upon criminal actions shall serve as the statute of limitations upon civil actions if the conduct complained of in the civil action could subject the defendant to a criminal prosecution.

For purposes of the pending motions these foreign statutes will be taken as true in the form in which they have been pleaded. F.R.C.P. 44.1. *See generally, Crespo v. United States*, 399 F.2d 191, 185 Ct.Cl. 127 (1968).

██ Before the court are the defendant's motion to dismiss the complaint and the defendant's motion to strike certain paragraphs of the complaint. The motion to dismiss advances three grounds for dismissal: failure to institute this action within the applicable statute of limitations, failure to join Karl Foerster as an indispensible party,[1] and res judicata by virtue of a previous award of damages in favor of this plaintiff by the Yugoslavian War Crimes Commission in 1946.[2] The motion to strike contends that certain paragraphs of the plaintiff's complaint contain extraneous and scandalous matter. For the reasons set forth herein, the court finds the statute of limitations defense to be dispositive, thus the remaining issues in the motion to dismiss and the motion to strike need not be addressed.

██ A federal court exercising diversity jurisdiction is bound by the substantive law and the conflicts of law rules of the state in which it sits. *Erie Ry. Co. v. Tompkins*, 304 U.S. 64, 58 S. Ct. 817, 82 L.Ed. 1188 (1938); *Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U. S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). Thus this court must proceed as would "another court" of Illinois in evaluating the enforcibility and viability of the plaintiff's claim. *See, Allstate Insur. Co. v. Charneski*, 286 F.2d 238 (7th Cir. 1960). The enforcibility of a foreign cause of action and the viability of that action under the applicable statute of limitations are distinct issues, thus the two will be examined separately.

### Enforcibility

██ Rights of action accruing under foreign law which are transitory, not penal in nature, and which do not violate public policy have been recognized and enforced in the courts of Illinois. *Clubb v. Clubb*, 402 Ill. 390, 84 N.E.2d 366 (1949); *Mutual Service Casualty Insur. Co. v. Providence Mutual Casualty Co.*, 25 Ill.App.2d 429, 166 N.E.2d 316 (1960). The nature of the instant cause of action is tortious conversion, a transitory claim attaching personal obligation, which under general principles of comity may be enforced against the tortfeasor wherever he is found. *Hanna v. Grand Trunk Ry. Co.*, 41 Ill.App. 116 (1891); *United Biscuit Co. v. Voss Truck Lines*, 407 Ill. 488, 95 N.E.2d 439 (1950). Although the plaintiff seeks significant monetary damages, the cause of action asserted against this defendant cannot

1. While not essential to this court's resolution of the pending motions, the court notes that the defendant has failed to demonstrate the indispensability of Karl Foerster pursuant to Rule 19. The complaint does not allege any facts which would indicate that Foerster is necessary for a complete adjudication of the case or that he has a material interest in the subject matter of this suit. *See generally, LeBeau v. Libbey Owens Ford*, 484 F.2d 798 (7th Cir. 1973); *Eads v.*

*Sayen*, 281 F.2d 791 (7th Cir. 1960); *Lubin v. Chicago Title & Trust Co.*, 260 F.2d 411 (7th Cir. 1958).

2. The defense of res judicata cannot be sustained in the absence of evidence that the Yugoslavian award of damages in 1946 involved the same parties, subject matter, and cause of action as the pending litigation. *See, Ray Schools of Chicago v. Cummins*, 12 Ill.2d 376, 146 N.E.2d 42 (1957); *Miller v. Shell Oil Co.*, 345 F.2d 891 (10th Cir. 1965).

be characterized as penal in nature because it is not equivalent to public vindication of public wrongs. *Huntington v. Attrill*, 146 U.S. 657, 13 S.Ct. 224, 36 L. Ed. 1123 (1892); *Evey v. Mexican Central Ry. Co.*, 81 F. 294 (5th Cir. 1897); *Salzman v. Boeing*, 304 Ill.App. 405, 26 N.E.2d 696 (1940). *Superior Laundry & Linen Supply Co. v. Edmanson-Bock Caterers, Inc.*, 11 Ill.App.2d 132, 136 N.E.2d 610 (1956).

■ Thus the focal comity issue is whether the recognition of the Yugoslavian Civil action is appropriate according to Illinois public policy considerations.[3] In *Hartness v. Aldens, Inc.*, 301 F.2d 228 (7th Cir. 1962) the Seventh Circuit Court of Appeals summarized the Illinois view on the enforcibility of foreign causes of action[4] and adopted the broad comity standard enunciated in *Loucks v. Standard Oil Co.*, 224 N.Y. 99, 120 N.E. 198 (1918):

> A foreign statute will generally be enforced even though the forum lacks a similar statute, unless the foreign law is against public policy. Our own scheme of legislation may be different. We may even have no legislation in the subject. That is not enough to show that public policy forbids us to enforce a foreign right . . . The courts are not free to refuse to enforce a foreign right. They do not close their doors unless help would violate some fundamental principle of practice, some prevalent conception of good morals, some deep rooted tradi-

tion of the common weal. 120 N.E. at 201–02.

■ For purposes of determining the enforcibility of a foreign cause of action, the public policy investigation is not directed toward evidence of positive condonation of that foreign cause of action by statutory or case authority in Illinois. *Millsap v. Central Wisconsin Motor Transport Co.*, 41 Ill.App.2d 1, 189 N.E.2d 793 (1963). Rather this inquiry may be framed solely in the negative to determine whether any Illinois statutory or case authority indicates that a civil action for seizure of property during time of war is repugnant or antagonistic to Illinois policy.[5] No authority has been cited by the parties or located by the court which would preclude the maintenance of this action in the forum. However, as the Yugoslavian statute asserted by the plaintiff was enacted subsequent to the acts alleged in the complaint, the possibility that the Yugoslavian statute is retroactive legislation, imposing ex post facto liability antagonistic to Illinois public policy, must be examined.

■ As a general rule the intended retroactive effect of a statute should be recognized and enforced to the extent that it modifies a pre-existing remedy rather than imposes new liability. *See generally, U. S. Steel Credit Union v. Knight*, 32 Ill.2d 138, 204 N.E.2d 4 (1965); *Ogdon v. Gianakos*, 415 Ill. 591, 114 N.E.2d 686 (1953). The intended retroactive effect of the statute plaintiff asserts is this forum, the "Law

---

3. A federal court exercising diversity jurisdiction must adhere to the articulated public policy of the state in which it sits. *Griffin v. McCoach*, 313 U.S. 498, 61 S.Ct. 1023, 85 L.Ed. 1481 (1941).

4. In this country, courts will generally enforce the law of the place where the injury occurred unless to do so is contrary to the law, morals or policy of the forum. *Chicago & E. & I. RR. Co. v. Rouse*, 178 Ill. 132, 52 N.E. 951 (1899). If the relief sought is against the law of the forum state the relief will be denied. *Whitney v. Madden*, 400 Ill. 185, 79 N.E.2d 593 (1948).

5. While this court must predicate the determination as to the enforcibility of the Yugoslavian statute upon Illinois public policy, it is interesting to note that the United States has articulated a policy providing for the compensation of losses sustained by American citizens in Europe and Asia during the Second World War. War Claims Act, 50 U.S.C.App. § 2001 et seq. *See also, United States v. Hermann Goering*, (Report of the Nuremburg Trials) 6 F.R.D. 73 (1946).

Concerning Treatment of Property . . . Taken Away From its Owner By the Enemy or its Helpers", is clear from the statutory language. (Paragraph 19 of plaintiff's complaint, *supra.*) This intended effect may be recognized if the statutory liability is equivalent to a pre-existing, non-codified liability for seizure of personal property during wartime for personal use. The plaintiff's cogent brief on this subject traces the history of American and international law delineating the confiscation rights of belligerent nations. *See, The Prize Cases,* 67 U.S. (2 Black) 635, 17 L.Ed. 459 (1862); *The 1907 Hague Convention Articles on Warfare,* 36 Stat. 2277. On this basis the court finds it proper to conclude that the Yugoslavian statute is a codification of a pre-existing liability which is not tantamount to ex post facto legislation. As such, the intended retroactive application of this statute does not offend Illinois public policy.

Accordingly, the court concludes that the Yugoslavian civil action is enforceable in this forum as it is not antagonistic to any articulated Illinois public policy, and it appears to be consistent with generally recognized principles of international jurisprudence.

*Viability*

Having found that the Yugoslavian civil action may be recognized and enforced in this forum, the court must determine the applicable statute of limitations to ascertain the viability of the plaintiff's claim. The defendant correctly argues that the five year Illinois statute of limitations governing actions to recover damages for injury to real or personal property controls the pending litigation. Ill.Rev.Stat. ch. 83, § 16 (1973). As the plaintiff's claim arose in 1942 the court finds that the five year statute bars the maintenance of this action in this forum.

▮▮▮▮ The bar of the statute of limitations is ordinarily viewed as an affirmative defense which may be raised by motion to dismiss if the applicability of the statute is apparent from the face of the complaint. See generally, *Stanley v. Chestak,* 34 Ill.App.2d 220, 180 N.E.2d 512 (1962); *Anderson v. Linton,* 178 F. 2d 304 (7th Cir. 1949). Illinois courts have consistently characterized statutes of limitations as procedural, affecting only the remedy and not the substantive rights of the parties. *Jackson v. Shuttleworth,* 42 Ill.App.2d 257, 192 N.E.2d 217 (1963). They do, however, distinguish purely procedural statutes of limitations from those statutes which create a right in which time is an element.

> Statutes of limitation relate to the question of remedy by fixing a time within which a suit must be brought. Those statutes which create a substantive right unknown to the common law and in which time is made an inherent element of the right so created, are not statutes of limitation. *Smith v. Toman,* 368 Ill. 414, 14 N.E.2d 478 (1938).

*See also, Shelton v. Woolsey,* 20 Ill.App. 2d 401, 156 N.E.2d 241 (1959). Illinois courts, and federal courts exercising diversity jurisdiction, have noted that "in those cases where the statute of limitations is not a part of the cause of action . . . it is purely a procedural matter, and is to be governed by the law of the forum." *Haefer v. Herndon,* 22 F. Supp. 523 (S.D.Ill.1938). Numerous state and federal cases have espoused this substantive-procedural dichotomy, but few have indicated the rationale for the distinction. The dichotomy has been adopted in rote fashion and the analysis has been reduced to a mechanical investigation as to whether the foreign statute includes a specific time limitation on the exercise of the right.

The first reported analysis of the substantive-procedural dichotomy in selecting the controlling statute of limitations appears in *The Harrisburg,* 119 U.S. 199, 7 S.Ct. 140, 30 L.Ed. 358 (1886). The Court held that where "the liability and the remedy are created by the same statutes, . . . the limitations of

the remedy are therefore to be treated as limitations of the right". 119 U.S. at 214, 7 S.Ct. at 147. In *Davis v. Mills*, 194 U.S. 451, 24 S.Ct. 692, 48 L.Ed. 1067 (1904), Mr. Justice Holmes noted that the distinction between substantive and procedural statutes of limitations may often be the product of judicial characterization rather than legislative intent. The Court offered the following principle of construction:

> The common case is where the statute creates a new liability and in the same section or in the same act limits the time within which it can be enforced, whether using words of condition or not. But the fact that the limitation is contained in the same section or in the same statute is material only as bearing on construction. It is merely a ground for saying that the limitation goes to the right created, and accompanies the obligation everywhere. The same conclusion would be reached if the limitation was in a different statute, provided it was directed to the newly created liability so specifically as to warrant saying that it qualified the right. 194 U.S. at 454, 24 S.Ct. at 694.

The advantage of this approach is that it does not "lead American courts into the necessity of examining . . . the unfamiliar peculiarities and refinements of different foreign legal systems." *Bournias v. Atlantic Maritime Co.*, 220 F.2d 152, 156 (2d Cir. 1955). This principle sufficiently protects the interests of the forum state and insures moderate predictability of outcome. The premise underlying this specificity test is one of comity: a court enforcing a foreign statute in derogation of the common law should recognize the express intention of the foreign legislature by enforcing the right with its attendant qualifications. *O'Neal v. National Cylinder Gas Co.*, 103 F.Supp. 720 (N.D.Ill.1952).

 In applying the specificity test to the statutes in the instant case, the court concludes that the Yugoslavian right is not qualified by a Yugoslavian remedy. The civil action created by the "Law Concerning Treatment of Property . . . Taken Away from the Owner by the Enemy or its Helpers" became effective in Yugoslavia in 1946. As plead in the plaintiff's complaint, that statutory right is not conditioned by an included specific time limitation. (Paragraph 21 of plaintiff's complaint, *supra*.) In 1965 the Yugoslavian legislature provided that there shall be no statute of limitations for the criminal prosecution of war crimes. (Paragraph 20 of plaintiff's complaint, *supra*.) That act was expressly directed to criminal prosecutions pursuant to Article 125 of the Yugoslavian Criminal Code, but it did not specifically provide any extension of the statute of limitations for recovery by civil action under Article 134(a). (Paragraph 19 of plaintiff's complaint, *supra*.) The 1953 Yugoslavian Statute of Limitations is facially applicable to any civil action which accrues as the result of acts which would subject the defendant to a criminal prosecution. (Paragraph 22 of plaintiff's complaint, *supra*.) This statute of limitations was enacted seven years subsequent to the civil action created in Article 134(a), without any apparent reference to it. As set forth in the plaintiff's complaint, Section 20 of the Yugoslavian Statute of Limitations appears to be equally applicable to civil actions the result of criminal acts such as arson, burglary, vandalism or seizure of personal property during wartime. Examining the foreign laws as plead in the complaint, the court concludes that the Yugoslavian statute of limitations asserted by the plaintiff is a general statute of limitations, not so specifically directed to the civil action asserted as to warrant a finding that it qualifies that right. *Davis v. Mills*, *supra*.

The court finds that the Yugoslavian statute asserted by the plaintiff is a general statute of limitations, not specifically directed to the plaintiff's cause of action, and under Illinois law, not applicable in the instant case. As the Yugo-

slavian statute of limitations is not substantive in nature, the procedural statute of limitations of the forum governs.

The plaintiff contends that if the five year Illinois statute of limitations is found to control this foreign action, the doctrine of equitable estoppel should preclude the Illinois defendant from asserting that statute as a bar. The plaintiff argues that one who flees the jurisdiction in which he has allegedly committed a tort to avoid an action for damages by the injured party,[6] should not be permitted to rely on the statute of limitations defense. Recognizing that no Illinois court has adopted this position, the plaintiff has structured his argument in reliance on precedent from other jurisdictions. A diversity court, as another court of Illinois, should adopt the best or more reasonable approach when ruling on novel state issues. *See e. g., Filley v. Kickoff Publishing Co.,* 454 F.2d 1288 (6th Cir. 1972) ; *Gillam v. J. C. Penny Co.,* 341 F.2d 457 (7th Cir. 1965). The court may look beyond the forum state to prudently select the best law of other jurisdictions to govern state novel issues.

The doctrine of equitable estoppel may be applied when "in all the circumstances of the case conscience and duty of honest dealing should deny one the right to repudiate the consequences of his representations or conduct." *Noel v. Teffeau,* 116 N.J.Eq. 446, 174 A. 145 (1934). This broad statement may pertain to the instant litigation in light of plaintiff's allegation that the defendant Bruno willfully absented himself from the place where the claim arose to avoid the legal consequences of his acts. However, an examination of the cases relied upon by the plaintiff indicates that no court has held that the defendant's absence alone constitutes grounds for application of the doctrine of equitable estoppel.

*Noel v. Teffeau, supra,* involved a statutory duty to notify the party wronged, breach of which precluded the plaintiff from knowing who, not where, the potential defendant might be. In the cases cited by the plaintiff, each defendant materially misrepresented either his identity or his location. *Rudikoff v. Byrne,* 101 N.J.Super. 29, 242 A.2d 880 (1968) ; *Application of Nationwide Mutual Insur. Co.,* 39 Misc.2d 782, 241 N. Y.S.2d 589 (1962) ; *McCampbell v. Southard,* 62 Ohio App. 339, 23 N.E.2d 954 (1937) ; *Brown v. Burke,* 155 Ill. App. 249 (1910). This plaintiff's complaint fails to allege any such misrepresentation, asserting only that the defendant allegedly fled Yugoslavia to avoid the legal consequences of his acts. Further, the interest of the forum in providing a remedy for tortious conduct committed within its jurisdiction was a critical factor in each case relied upon by the plaintiff, which is not present in the pending litigation.

Lastly, the plaintiff argues that *Gill v. Gill,* 56 Ill.2d 139, 306 N.E.2d 281 (1974) evidences an inclination by an Illinois court to apply the equitable estoppel doctrine in appropriate circumstances. The estoppel theory in *Gill* arose in the context of post decree child support payments. The plaintiff in *Gill* filed suit thirteen years after the effective date of the divorce decree. The Illinois statutory duty of support has no restrictive statute of limitations, and the defendant relied on the equitable doctrine of laches. The court found that in the absence of evidence that defendant resided in the county or that the plaintiff had knowledge of the defendant's location, general allegations of laches were insufficient to maintain the defense.

---

6. Paragraph 16 of the plaintiff's complaint alleges :
 "That a time unknown to the Plaintiff but before the defeat of the German Occupation army in Yugoslavia, the defendant, to avoid present and frustrate any prosecution for his knowledge, willful and malicious conduct, fled Yugoslavia for places unknown to the plaintiff."

*See, Pyle v. Farrell*, 12 Ill.2d 547, 147 N.E.2d 341 (1958). This court cannot find authority for the extension of the equitable estoppel theory advocated by the plaintiff in the *Gill* case. It is neither factually nor legally analogous to the case under consideration. It cannot be viewed as support for the proposition that an Illinois court would be willing to adopt the estoppel theory advocated by the plaintiff.

Accordingly, the court finds that the applicable Illinois statute of limitations of five years for injury to real and personal property has not been tolled by any established action of the defendant. [Ill.Rev.Stat. (1973), ch. 83, § 23 (1973) (tolling by concealment of the existence of a cause of action).] As the plaintiff's cause of action arose in 1942, the maintenance of this claim in an Illinois forum is barred.

 The plaintiff has suggested that the issues of this case are governed by the conflicts rule enunciated in *Ingersoll v. Klein*, 46 Ill.2d 42, 262 N.E.2d 593 (1970) that the "law of the place where the injury occurred should determine the rights and liabilities of the parties, unless Illinois has a more significant relationship with the parties in which case the law of Illinois should apply". 262 N.E.2d at 595. In the five years since *Ingersoll* adopted the "most significant relationship" test,[7] Illinois courts have uniformly applied that conflicts rule in the determination of rights and liabilities in the areas of capacity, guest statutes, and standards of care. No Illinois court has indicated that *Ingersoll* in any way affects the long standing Illinois statute of limitations substantive-procedural dichotomy, and no Illinois court has applied *Ingersoll* as the touchstone in a choice of statute of limitations analysis. One federal court has hinted at the potential use of *Inger-*

*soll* in choice of statutes of limitations issues, but noted that "*Ingersoll* does not speak to the issues of where and when a cause of action arises, but rather goes to the question of what substantive law shall govern it." *Klondike Helicopters Ltd. v. Fairchild-Hiller Corp.*, 334 F. Supp. 890, 894 (N.D.Ill.1971).[8] This court recognizes that the application of the *Ingersoll* rule could require a different result in this statute of limitations analysis, as the complaint does not indicate that this cause would be barred in Yugoslavia. However, the diversity court must hesitate in extending the law of the forum state in the absence of some indication from the courts of the forum that the extension would be desirable. This court is again faced with the resolution of a novel state issue, and finds that the extension of *Ingersoll* to govern the choice of the statute of limitations is neither the best law nor the more reasonable rule.

Without attempting to summarize the entire body of developing law in this area, the court notes that the few cases which have applied the "most significant relationship" approach in the choice of the applicable statute of limitations, have adopted that analysis to achieve the result of a borrowing statute. *Farrier v. May Dept. Store Co.*, 357 F.Supp. 190 (D.D.C.1973); *Heavner v. Uniroyal Co.*, 63 N.J. 130, 305 A.2d 412 (1973). These cases use the Second Restatement approach to preclude the maintenance of an action in the forum by applying the shorter limitations period of the state where the cause of action arose. This analysis accomplished the objective of minimizing forum shopping, which is provided for in other states by a borrowing statute. Thus states which lack a legislative directive have attempted to achieve the desired result by judicial remediation. As Illinois has a borrowing

---

7. American Law Institute, Second Restatement of Conflict of Laws § 379.

8. The court concluded "However, even if we were to apply *Ingersoll* to determine what statute of limitations to apply, the result would be the same." 334 F.Supp. at 894.

statute, the persuasiveness of these two cases is minimized. [Ill.Rev.Stat. ch. 83, § 21 (1973)].

The court has located only one case which has unequivocally adopted the Second Restatement approach in the choice of the statute of limitations analysis. In *Horton v. Jessie*, 423 F.2d 722 (9th Cir. 1970) the Ninth Circuit Court of Appeals concluded summarily that "[u]nder the California significant contacts approach, we find too little Missouri contacts and too many in California to apply the Missouri statute." A subsequent district court decision refused to "place dispositive reliance on the brief per curiam opinion" finding that it would "hardly comport with this court's obligation under *Erie R. R. Co. v. Tompkins*, supra, to transmute *Horton* into an authoritative revision of California law." *Klingebiel v. Lockheed Aircraft Corp.*, 372 F.Supp. 1086, 1090 (N. D.Col.1971). In *Klingebiel* the district court held the California statute of limitations to control a foreign wrongful death action governed by German substantive law. The court's opinion as to the applicability of the California statute was premised on the substantive-procedural analysis, specifically rejecting the Second Restatement approach in the choice of the controlling statute. In affirming the district court decision, the Ninth Circuit implicitly rejected the broad language of *Horton*:

Judge Zirpoli stated that *Horton v. Jessie*, 9 Cir., 1970, 423 F.2d 722, "adopts a 'significant contacts' approach" in applying the California statute of limitations. *Horton* was not an attempt at an "authoritative revision of California law." In *Horton* we did not reach the issue of whether or not the substance-proce-

dure dichtomy was still viable in California. There was no need to do so because it was clear that regardless of the approach taken the California statute of limitations applied. *Klingebiel v. Lockheed Aircraft Corp.*, 494 F.2d 345, 347 (9th Cir. 1974).

The circuit court's retreat in *Klingebiel* from the Second Restatement approach adopted in *Horton* cautions this court in the formulation of Illinois policy.

This court has found no authority to support the plaintiff's argument that the extension of the *Ingersoll* approach to the selection of the applicable statute of limitations is the preferable rule. As Illinois has enacted a borrowing statute the Second Restatement approach is not necessary to achieve the borrowing statute result in this forum. Further the court finds that adopting the Second Restatement approach would jeopardize the measure of predicability of outcome guaranteed by the substantive-procedural analysis, while minimizing the impact of the interests of the forum state. *See, Wurfel, Statutes of Limitations in the Conflict of Laws*, 52 N.Carolina L.Rev. 489, 560–67 (1974). In resolving this novel state issue, this diversity court finds that the *Ingersoll* most significant relationship approach should not be extended to include the choice of applicable statute of limitations. Although Yugoslavian law may well have governed the substantive issues of this lawsuit, the court finds that the Illinois statute of limitations precludes the maintenance of this action in this forum. *Wells v. Simonds Abrasive Co.*, 345 U.S. 514, 73 S. Ct. 856, 97 L.Ed. 1211 (1953).

The defendant has also argued that two sections of the Yugoslavian statute of limitations [9] would bar the

---

9. Section 14 of Law Concerning Statute of Limitations provides:
 "Claims shall be barred after the expiration of a ten year period, unless specifically provided for by law."
 Section 19 of the Law Concerning Statute of Limitations provides:

"Actions for the recovery of damages shall be barred after the expiration of three years after the plaintiff learned of the damage and the person causing it. In any event such action shall be barred after the expiration of ten years after the day the cause of action occurred."

maintenance of this action in Yugoslavia, and as a result this claim is barred in an Illinois forum by the Illinois Borrowing Statute. Ill.Rev.Stat. ch. 83, § 21 (1973). Assuming, *arguendo*, that the courts were to take cognizance of the additional Yugoslavian statutes submitted by the defendant in support of the motion to dismiss but not plead by the plaintiff in the complaint, the court finds that the defendant's analysis has placed the cart before the horse. The Illinois Borrowing Statute is not a choice of law formulation. It is a rule of exclusion whereby actions brought in an Illinois forum, not barred by the applicable Illinois statute of limitation, are denied enforcement if barred by the statute of limitations of the place where the cause of action arose. *Speight v. Miller,* 437 F.2d 781 (7th Cir. 1971); *Sarro v. Maupin,* 127 Ill.App.2d 26, 261 N.E.2d 756 (1970); *Manos v. Trans World Airlines,* 295 F.Supp. 1166 (N.D. Ill.1969). As this court has concluded that the Illinois statute of limitations governs this action, and the Illinois statute bars the maintenance of this cause in this forum, the Borrowing Statute is inapplicable.

Summarizing, the court finds that the Yugoslavian civil cause of action plaintiff asserts in this diversity action could be recognized and enforced under the public policy considerations of the state of Illinois. However, the court further finds that this action is not viable as the applicable Illinois statute of limitations bars the maintenance of this action in this forum. The plaintiff has not demonstrated that the five year statute has been tolled pursuant to Illinois law, and the court finds the equitable estoppel doctrine advanced by the plaintiff to be inappropriate. Accordingly, the defendant's motion to dismiss is hereby granted, with each party to bear its own costs.