**In re the MURALO COMPANY, INC., a New Jersey Corporation, et al., Debtors.**

**The Muralo Company, Inc., and Norton & Son of California, Inc., Debtors and Debtors in Possession, Plaintiffs,**

**v.**

**All Defendants Listed on Exhibits A Through D to Complaint (as Synkoloid Asbestos Plaintiffs), and Jane Does 1–100, and John Does 1–100, Defendants.**

Bankruptcy No. 03–26723 (MS).

Adversary No. 03–2008 (MS).

United States Bankruptcy Court, D. New Jersey.

July 16, 2003.

Brian McMahon, Esq., Gibbons, DelDeo, Griffinger & Vecchione, PC, Newark, NJ, for Plaintiff/Debtor.

Jeffrey D. Prol, Esq., Lowenstein Sandler, PC, Roseland, NJ, for Official Committee of Asbestos Claimants.

Margaret Lambe Jurow, Esq., United States Department of Justice, Office of the United States Trustee, Newark, NJ, for U.S. Trustee.

Terri Jane Freedman, Esq., Porzio, Bromberg & Newman, P.C., Morristown, NJ, Proposed co-counsel to the Official Committee of Unsecured Trade Creditors of the Muralo Company, Inc.

### OPINION

MORRIS STERN, Bankruptcy Judge.

The Muralo Company, Inc. and Norton & Son of California, Inc. ("Debtors"), move for relief which, in essence, would permit service of Summons and Complaint in this adversary proceeding (the "Adversary Proceeding"), upon certain counsel as implied or court-designated agents of the

defendants herein. Counsel are identified as currently representing the defendants in state court actions. In fact, the more than 60,000 defendants here are plaintiffs in thousands of pending state court actions (the "Synkoloid Asbestos Actions"), where one or both Debtors are named defendants. There are seventy-six (76) identified counsel who would per this motion be served with initial process as agents for their clients. Debtors' motion in this regard seeks clarification of this court's Order of May 30, 2003 to the effect that such service has been approved, or, alternatively, an order so authorizing the service.

This court finds that it has jurisdiction pursuant to 28 U.S.C. 157 and 1334 and the "District Court General Order of Reference" of the United States District Court for the District of New Jersey, dated July 23, 1984. Service issues are governed by FED. R. BANKR.P. 7004.

On May 20, 2003 (the "Petition Date"), Debtors filed voluntary petitions for relief under chapter 11, title 11, United States Code, 11 U.S.C. 101, *et seq.* (the "Bankruptcy Code"). Venue of Debtors' chapter 11 cases, this Adversary Proceeding and the immediate motion is properly in this district, pursuant to 28 U.S.C. 1408 and 1409. Debtors continue to operate their businesses and manage their properties pursuant to § 1107(a) and 1108 of the Bankruptcy Code as debtors-in-possession.

### *FACTUAL BACKGROUND*

The Muralo Company, Inc. ("Muralo"), is a family-owned and operated New Jersey corporation that produces and distributes paint and related products, including paint brushes and rollers, from its principal place of business in Bayonne, New Jersey, and its distribution plant/warehouse located in Chicago, Illinois. Norton & Son of California, Inc. ("Norton"), is a California corporation affiliated with Muralo through common shareholders and is primarily a manufacturing company which produces patch and repair products sold and distributed by Muralo.

Debtors assert that these chapter 11 cases were filed because of the thousands of asbestos-related complaints that have been filed against one or both of them in state courts throughout the country. As detailed more fully in Debtors' "first-day" pleadings heretofore filed with the court and in the Complaint for Declaratory Judgment Relating to Successor Liability for Synkoloid Products (the "Complaint") which commenced the Adversary Proceeding, the Synkoloid Asbestos Actions seek to hold Debtors liable for certain personal injuries (the "Synkoloid Asbestos Claims"). These injuries purportedly arise out of the alleged exposure to Synkoloid products which Muralo claims contained asbestos prior to (but allegedly not after) Muralo's purchase of Synkoloid division assets from The Artra Group, Inc. ("ARTRA"). ARTRA is now a debtor in a chapter 11 case pending in the Bankruptcy Court for the Northern District of Illinois.

The Adversary Proceeding, initiated on June 7, 2003, seeks a declaratory judgment that Debtors are not liable for any Synkoloid Asbestos Claims, as defined in the Complaint, under any "successor liability," or analogous theory of liability. Each of the individually named defendants in the Adversary Proceeding (the "Synkoloid Asbestos Plaintiffs") is said to have filed a Synkoloid Asbestos Action in one of various state courts throughout the country against Muralo and/or Norton, as well as ARTRA and/or Synkoloid. The Synkoloid Asbestos Actions are alleged to be integrally related to this Adversary Proceeding in that both are said to center on whether Debtors have any liability for claims alleging injuries resulting from exposure to Synkoloid asbestos-containing

products marketed prior to Muralo's purchase of Synkoloid assets.

Debtors assert that pursuant to an express indemnity agreement between Muralo and ARTRA and by ARTRA's purported admission of successorship to Synkoloid liabilities, ARTRA is said to have assumed and controlled defense of, and provided indemnity against, all Synkoloid Asbestos Actions for over twenty years. Though some of these actions were initiated by complaints served upon Muralo rather than ARTRA, Muralo maintains that it transmitted to ARTRA each of the complaints in the Synkoloid Asbestos Actions referring to Muralo. Debtors assert that during this same period, ARTRA defended and/or settled every Synkoloid Asbestos Action nominally against "Synkoloid, a Division of Muralo," without any material participation by Muralo.

Because ARTRA assumed the defense of any Synkoloid Asbestos Claims for over twenty years, Debtors claim to have little or no information regarding the majority of the tens of thousands of Synkoloid Asbestos Actions pending on June 3, 2002. On that date ARTRA commenced its chapter 11 case and abruptly ceased defending the Synkoloid Asbestos Actions naming Muralo. Debtors specifically assert that they have no address information for the vast majority of the defendants named in this Adversary Proceeding.

Debtors claim that because of the sheer volume of Synkoloid Asbestos Plaintiffs, it would be impractical (if not impossible), as well as a grossly inefficient use of Debtors' assets, to require Debtors first to obtain current addresses for and then to serve each of the over 60,000 Synkoloid Asbestos Plaintiffs named as defendants in this Adversary Proceeding.

The legal representation of the tens of thousands Synkoloid Asbestos Plaintiffs is said to be centralized in relatively few law firms. Based upon the information said to be currently available to Debtors, the seventy-six law firms collectively represent the named defendants in this Adversary Proceeding, with roughly 40,000 represented by but three law firms. Baron & Budd, P.C. is said to represent almost 23,000 of the defendants named in this Adversary Proceeding.

In the subject chapter 11 cases, to date the following firms have filed Notices of Appearance on behalf of their asbestos-claimant clients: Baron & Budd, P.C.; Wilentz, Goldman & Spitzer; Silber Pearlman, LLP; Foster & Sear, LLP; Steven R. Penn, Esq.; and Brayton Purcell.[1] These firms are said to represent between approximately 41,000 and 49,000 claimants.

Though the chapter 11 cases are in their early stages, some of the attorneys who would be served as agent have already taken an active role in the proceedings by their appearing at first-day order or related hearings (*i.e.* Baron & Budd, P.C., and Wilentz, Goldman & Spitzer), and allegedly by seeking the appointment of an official committee of asbestos claimants. Debtors allege that Baron & Budd, P.C. and Wilentz, Goldman & Spitzer corresponded with the United States Trustee requesting the appointment of such a committee, which has been formed. In fact, the now-proposed counsel to the Asbestos Creditors' Committee appeared before this court on first-day orders, representing Baron & Budd, P.C. and/or its client-asbestos claimants. Debtors claim that attorneys representing Synkoloid Asbestos Plaintiffs will continue to take an active role in the chap-

---

**1.** Debtors also cite an appearance by "Williams Bailey Law Firm," which the court cannot verify.

ter 11 case on behalf of their clients. The Muralo Asbestos Creditors' Committee is comprised of seven *individuals,* each of whom is represented by counsel. Those counsel, in turn, represent between 40,000 and 48,000 claimants. Three of these firms also sit (as members) on the ARTRA Creditors' Committee; that committee includes six asbestos plaintiffs' firms representing between 30,000 and 38,000 claimants.

In ARTRA's chapter 11 case, Baron & Budd, P.C., has appeared on behalf of, and defended, their asbestos-claimant clients in an adversary proceeding naming those clients as defendants and in which the only process was served upon counsel. On May 7, 2003, an adversary proceeding was instituted by ARTRA and Debtors seeking an injunction pursuant to 11 U.S.C. § 105 that would stay asbestos litigation against Debtors and naming all known Synkoloid Asbestos Plaintiffs as defendants (the "ARTRA Adversary Proceeding"). ARTRA and Debtors sought and were granted the same relief requested herein. The Bankruptcy Court's May 16, 2003 Order authorizing service of the ARTRA Adversary Proceeding upon counsel provides in pertinent part the following:

> 2. Service of summons of the Movant's Complaint for Injunctive Relief In Furtherance of Debtor's First Amended Plan of Reorganization ("Complaint") on counsel to the Litigation Plaintiffs [*i.e.,* the Synkoloid Asbestos Plaintiffs] ... shall be deemed appropriate service of the Complaint.

Accordingly, service of the ARTRA Adversary Proceeding was said to be effected on counsel of record for the known asbestos claimants, all of whom were named as defendants in the ARTRA Adversary Proceeding (and are the same claimants named as defendants in this Adversary Proceeding). Thereafter, Baron & Budd,

P.C., appeared in the ARTRA Adversary Proceeding on behalf of its asbestos-claimant clients named therein, filing a motion to dismiss. At least to the point where Debtors filed their petitions, service through counsel as agents was not challenged in the ARTRA Adversary Proceeding. However, such a challenge may well have been in the offing.

Early in this case, Debtors' "Motion to Approve Notice Procedures for Individual Asbestos Claimants" was granted. The Order dated May 30, 2003 (the "Notice Procedures Order") provides in pertinent part that "the Debtors are authorized to send all notices, mailings, and other communications related to the chapter 11 case and all adversary proceedings commenced therein, *designated for service upon all creditors* ... only to counsel of record known to the Debtors to represent one or more Individual Asbestos Claimants." (Emphasis added.)

On June 12, 2003, Baron & Budd, P.C. and Silber Pearlman, LLP filed a "Conditional Objection to Order Approving Notice Procedures for Individual Asbestos Claimants." The Asbestos Claimants' Committee has also filed an objection to service on counsel. The objections focus on original process in the Adversary Proceeding and FED. R. BANKR.P. 7004. The Notice Procedures Order is deemed to be unclear as to whether it applies *only* to notice and service when such is to encompass "all creditors," or whether initial service of Summons and Complaint (to fewer than "all creditors") is included within the Order's ambit.

This court now addresses anew, in the specific context of *initial process,* the implied agent service issue and the related matter of designating, by court order, agents for service. Hearings on this issue were held on July 2 and July 15, 2003. Asbestos Creditors' Committee counsel ap-

peared; Baron & Budd, P.C. and Silber Pearlman, LLP, though having submitted a written objection, did not appear at the hearings; notwithstanding notice of the hearings, no other counsel filed an objection or appeared.

## DETERMINATION

### Finding of Facts

For purposes of this Opinion, the service-essential allegations of Debtors as set forth above are generally accepted. These essentials, regarding the existence of Synkoloid Asbestos Actions, statistical details of the representation of the 60,000 claimants, ARTRA's history of defense and indemnity of Debtors, and ARTRA's chapter 11 proceeding and the stated details thereof, have not been challenged by the Objectors.[2] Moreover, between the July 2 and July 15 hearing, committee counsel undertook the task of polling asbestos counsel, seeking resolution of the service dispute. By letter dated July 11, 2003, counsel advised this court as follows:

[To the court]

Pursuant to your direction to counsel at the July 2, 2003, hearing concerning the above-captioned matter, we have conferred with the attorneys representing members of the Official Committee of Asbestos Creditors (the "Asbestos Committee") concerning alternatives for resolving this motion. The attorneys that we have spoken to are unwilling to voluntarily accept service due to concerns that they lack authority from their clients to do so. However, while the Asbestos Committee continues to dis-

pute the legal authority for the Court to compel state court tort counsel to accept service of process herein, the Asbestos Committee does recognize that there are certain benefits to be derived from the relief requested by the Debtors and has authorized us to submit the enclosed form of order as a means of resolving the pending motion. In the event that the enclosed order is not acceptable to either the Debtors or the Court, the Asbestos Committee reserves its rights to continue to press its objection to the relief requested.

[Proposed counsel to Asbestos Creditors' Committee]

The form of order submitted provides for service to counsel, nevertheless allowing counsel recourse to dispute (within a forty-five-day period following service) the accuracy of Debtors' "client lists." The order would also preserve all rights to object pursuant to FED. R. BANKR.P. 7012 (incorporating FED.R.CIV.P. 12(b)-(h)). That would, presumably, permit the Rule 12(b)(2), (4) and (5) assertions pertaining to service of process to be re-raised in pleadings or by motion practice.

The discourse initiated by the Committee's submission is productive and positive. However, as appreciative as this court is of the efforts of the Committee and counsel, it is clear that the service dispute cannot be "settled." In fact, Debtors have not accepted the full form of order[3] which the Committee promotes. Moreover, the Committee does not indicate that it has authority to bind individual claimants (whether Committee members or other-

---

**2.** "Objectors" are the Asbestos Creditors' Committee, and Baron & Budd, P.C. and Silber Pearlman, LLP (for their Synkoloid clients).

**3.** Besides the recourse aspects of the Committee's proposed form of order, that draft ad-

dresses issues of (i) time to file responsive pleadings, (ii) cost of reproducing pleadings and of mailing, incurred by counsel in distributing documents to their clients, and (iii) dispensation per FED.R.CIV.P. 13(a) regarding compulsory counterclaims.

wise), and does not speak for all of claimants' counsel. Therefore, this court must resolve the service issues but will be duly advised by the Committee's proposal.

### Implied Agency

██ Implication of "agency" which would allow service of initial process upon counsel should be sparingly considered, given the stringent requirements of FED. R.CIV.P. 4, its Bankruptcy Rule counterpart, and the following due process/personal jurisdiction requirements as set forth in *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314, 70 S.Ct. 652, 94 L.Ed. 865 (1950) (internal citations omitted):

> An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.... The notice must be of such nature as reasonably to convey the required information ..., and it must afford a reasonable time for those interested to make their appearance.... But if with due regard of the practicalities and peculiarities of the case these conditions are reasonably met the constitutional requirements are satisfied....

Though rare, in extraordinary circumstances courts will approve service of initial process on counsel not expressly authorized as agent for service, implying agent status from counsel's representation (in one or another context) of the party to be served. As the court in *United States v. Bosurgi*, 343 F.Supp. 815, 818–19 (S.D.N.Y.1972), explains:

> An attorney, solely by reason of his capacity as an attorney, does not thereby become his client's agent authorized by "appointment ... to receive service

of process." Nor is the fact that an attorney represents his client in a completely unrelated litigation sufficient to establish the requisite authority. What is necessary is that it appear that the attorney was authorized either expressly or impliedly, to receive service of process for his client. And if such agency is to be implied, it must be implied from all the circumstances accompanying the attorney's appointment which indicate the extent of authority the client intended to confer. [Internal footnotes omitted; ellipsis in original.]

In *Bosurgi*, SAICI retained an attorney to assert its interest in money held in escrow subject to federal tax liens and another claim. SAICI's attorney filed a complaint in state court; the United States filed a complaint in federal district court on behalf of the taxing authority and served SAICI's state court attorney. The federal court upheld this service, deeming that the attorney's retention "necessarily required" resisting the claims of other interests in the money, including the claim of the federal government. SAICI's attorney's receipt of process was deemed a "necessary incident" to his pressing his client's claim to the money. *Bosurgi*, 343 F.Supp. at 818. The court concluded that the attorney was "impliedly authorized" to receive service of process in the federal suit, as it addressed SAICI's right to the money, "the very object" for which the attorney was originally retained. *Bosurgi*, 343 F.Supp. at 818. *Cf. In re Spirco, Inc.*, 201 B.R. 744, 751 (Bankr.W.D.Pa.1996); *rev'd o.g.*, 221 B.R. 361 (W.D.Pa.1998), *aff'd sub nom. Copelin v. Spirco, Inc.*, 182 F.3d 174 (3d Cir.1999) (approving service of a notice of motion classifying claims under FED. R. BANKR.P. 7004(b)(8), upon the attorney who had represented the creditor in obtaining a state court judgment against debtor; that attorney also represented the creditor in a

removal action; the court reasoned that debtor's claims motion would have a "direct and highly significant effect" on the creditor's judgment).

In the bankruptcy setting, an attorney who has provided a creditor active and vigorous representation in the main bankruptcy case may be found to have implied authority to receive service of process in a related adversary proceeding. *In re Ms. Interpret,* 222 B.R. 409, 416 (Bankr. S.D.N.Y.1998); *Luedke v. Delta Air Lines (In re Pan Am Corp.),* 159 B.R. 385, 394–395 (S.D.N.Y.1993); *In re Reisman,* 139 B.R. 797, 801 (Bankr.S.D.N.Y.1992). "When a defendant takes an active role in a Chapter 11 case and appears through counsel in a proceeding integrally related to the case, such counsel is implicitly authorized to receive process for the defendants." *In re Reisman,* 139 B.R. at 801. "Active" does not necessarily mean "vocal." *In re Ms. Interpret,* 222 B.R. at 416. The depth and breadth of authority which the client intended to confer on the attorney, and the degree of autonomy with which the attorney has acted in the related case, have been viewed as significant factors in the implied agency determination. *See In re Ms. Interpret,* 222 B.R. at 417 (where the attorney voted freely on behalf of the client in creditors' committee meetings without constantly conferring with the client, and the foreign client asserted that it appointed counsel to appear at the meetings because it would not send employees, it was clear that the client had appointed the attorney to represent it in the subject bankruptcy case; receipt of service in a related adversary proceeding was thus held to be a "necessary incident" to this representation).

Consistent with *Mullane,* given the "practicalities and peculiarities" of a case, a court may also find implied authority in an attorney best positioned under the circumstances to accept service of process. *Mullane,* 339 U.S. at 314, 70 S.Ct. 652; *In re Honigman,* 141 B.R. 76, 79–80 (Bankr. E.D.Pa.1992) (allowing debtor to serve a third party complaint upon a corporate creditor's foreign–domiciled manager by serving the counsel defending the corporate creditor and manager in a contemporaneous Eastern District of Pennsylvania case in which debtor was also a defendant). *See also United States v. Davis,* 38 F.R.D. 424, 425–26 (N.D.N.Y.1965) (where a foreign resident by power of attorney authorized his attorney "to do all things that are necessary in defending me before all tax bodies and all courts" but did not expressly authorize him as agent for service of process, the court implied agency for service of process because the court had "no fear" that this attorney would not convey process to his principal and because this attorney "was about the best candidate one could choose" to give his principal notice of the suit). *See also Dandrea v. Malsbary Mfg. Co.,* 839 F.2d 163, 170 (3d Cir.1988) (Hutchinson, J., dissenting) ("Service upon an attorney is not effective unless the attorney had either express *or implied* authority to receive service on his client's behalf") (emphasis added); *Durbin Paper Stock Co. v. Hossain,* 97 F.R.D. 639, 639–40 (S.D.Fla.1982) (implied agency found where defendant's attorney "functioned as the exclusive liaison" between plaintiff and defendant in a certain business joint venture of the parties); 7A C.J.S. *Attorney and Client* § 196 (2002) ("[A]n attorney retained to bring a suit may be impliedly authorized to receive service of process in a related suit which involves the very object for which he was initially appointed."). *Compare and contrast Nat'l Equip. Rental, Ltd. v. Szukhent,* 375 U.S. 311, 316, 84 S.Ct. 411, 11 L.Ed.2d 354 (1964).

Though much of FED.R.CIV.P. 4 is incorporated into FED. R. BANKR. P. 7004, there are important differences pertaining, in particular, to *personal jurisdiction*. Rule 7004(d) provides for nationwide service of process, permitting bankruptcy courts to exercise personal jurisdiction, for example, without applying a minimum contacts analysis. *See Busch v. Buchman, Buchman & O'Brien*, 11 F.3d 1255, 1258 (5th Cir.1994). *Accord In re Federal Fountain, Inc.*, 165 F.3d 600 (8th Cir.1999); *Diamond Mortgage Corp. v. Sugar*, 913 F.2d 1233, 1244 (7th Cir.1990), *cert. denied*, 498 U.S. 1089, 111 S.Ct. 968, 112 L.Ed.2d 1054 (1991). Moreover, in bankruptcy adversary proceedings, service of process by first-class mail *and upon agents* is specifically provided for (a distinct differentiation between FED. R. BANKR. P. 7004[4] and FED. R.CIV.P. 4).

■ At issue initially is whether the facts of this mass tort case (already designated "Complex" per this District's Bankruptcy Guidelines), justify implying agent status for Synkoloid Asbestos Plaintiffs' counsel. Factual analysis includes the following:

(i) Identification and evaluation of prior and current representation of Synkoloid Asbestos Plaintiffs (here defendants) by counsel who would be served with process;

(ii) Comparison of substantive issues in ongoing state court cases involving purported counsel-agent representations, with those of the Adversary Proceeding;

(iii) Review of the record of appearances (and assessment of potential for same) of purported counsel-agents in the immediate chapter 11 cases;

(iv) Review of FED. R. BANKR.P. 2019 submissions and requirements;

(v) Assessment of the burden placed on Debtors in serving, directly, the named defendants;

(vi) Assessment of the burden placed on purported counsel-agents if service on them should be permitted (and the overall effect on them and their clients from such service); and

(vii) Inspection of the actuality, quality, and content of notice of the Adversary Proceeding, if service on counsel should be permitted.

### *Prior and Current Representation*

It is undisputed that at least the bulk (if not all) of the defendants in the Adversary Proceeding are represented by one of seventy-six counsel[5] (*i.e.* the purported counsel-agents) in Synkoloid Asbestos Actions. Moreover, these defendants appear to have been identified as claimants in the ARTRA chapter 11 case and, more specifi-

---

4. Rule 7004. Process; Service of Summons, Complaint

\* \* \*

(b) SERVICE BY FIRST CLASS MAIL. Except as provided in subdivision (h) [service on an insured depository institution], in addition to the methods of service authorized by Rule 4(e)-(j) FED.R.CIV.P., service may be made within the United States by first class mail postage prepaid as follows:

\* \* \*

(8) Upon any defendant, it is also sufficient if a copy of the summons and complaint is mailed to an agent of such defendant autho-

rized by appointment or by law to receive service of process, at the agent's dwelling house or usual place of abode or at the place where the agent regularly carries on a business or profession and, if the authorization so requires, by mailing also a copy of the summons and complaint to the defendant as provided in this subdivision.
*See also* Rule 7004(b)(1).

5. This number is apparently somewhat uncertain; Debtors indicate that eighty might now be the right count. As will be seen, *infra*, this variation should not be significant.

cally, "categorized" there for all notice purposes by and through these same state court counsel. (Since it does not appear that proofs of claim have been filed in ARTRA's bankruptcy case by the bulk of Synkoloid Asbestos Plaintiffs, ARTRA's schedule of such claimants is all Debtors have available to them as a database; that database is apparently organized by claimants' counsel in the Synkoloid Asbestos Actions.)[6] Ultimately, the purported counsel-agents were identified as agents for service of initial process in the ARTRA court's May 16, 2003 Order, arising from the ARTRA Adversary Proceeding seeking to enjoin the Synkoloid Asbestos Actions. These attorney-client relationships indicate, without more, a very strong connection between *all* asbestos-related matters in controversy as they pertain to each defendant, and the purported counsel-agents representing them.

***Comparison of Substantive Issues***

The Adversary Proceeding, seeking a declaratory judgment as to the successor liability of Debtors for asbestos-related illness arising from Synkoloid products, is, quite obviously, substantively linked to the Synkoloid Asbestos Actions. Successor-liability issues are embedded in every state court action brought by the defendants against Debtors. As in *Bosurgi*, a unity of representation would logically flow from the fact that the "very object" of the Adversary Proceeding is a declaration determining such embedded issues.

Similarly, the ARTRA bankruptcy case, including the ARTRA Adversary Proceeding, is substantially related to both the Synkoloid Asbestos Actions *and* the immediate chapter 11 cases, including the Adversary Proceeding. The ARTRA connection to the state court cases is clear. Synkoloid Asbestos Claimants are scheduled claimants in ARTRA's proceeding. Resolution of those claims (with linkage to insurance coverage issues and the indemnification of Muralo) connects "back" to the state court actions, and "forward" to the Muralo bankruptcy. The ARTRA relationship to the immediate chapter 11 cases and Adversary Proceeding is thus likewise evident. In Muralo, the claims process and administration of estate assets (including available insurance coverages through the ARTRA indemnification and otherwise), plainly tie into both ARTRA and the Synkoloid Asbestos Actions. In sum, counsel representing Synkoloid Asbestos Plaintiffs would, on their clients' behalf, monitor, and as to the few counsel representing the majority of the claimants, likely enter appearances in, the entire continuum of proceedings arising after the state court actions, including ARTRA's chapter 11 case, the ARTRA Adversary Proceeding, Debtors' chapter 11 cases, and ultimately the Adversary Proceeding. In *Bosurgi* terms, such representation would be "necessarily required" by the initial retention of counsel. 343 F.Supp. at 818. Overarching is the significance of the embedded successor-liability issues; these issues are prominent in the Synkoloid Asbestos Actions and are the essence of the Adversary Proceeding.

In the bankruptcy setting, the purported counsel-agents' participation in ARTRA's case is telling; as set forth earlier, the ARTRA Creditors' Committee includes six law firms, which would be served per Debtors' motion (representing no less than half of the defendants whose service is now at issue). It is inconceivable that the balance of the seventy-six counsel would not monitor ARTRA developments through the committee or otherwise. Such participation in the main ARTRA chapter 11

---

6. And, indeed subject to inevitable errors.

case would justify and imply actual agency in an adversary proceeding which is essentially "married" to the state court actions. In ARTRA, the purpose of the ARTRA Adversary Proceeding was to enjoin the Synkoloid Asbestos Actions, an undeniable linkage between the state court actions and the bankruptcy litigation. Hence, the ARTRA order for service of original process on counsel-agents appears to have been well-grounded. In Muralo, the same degree of counsel participation in the main cases as is ongoing in ARTRA is expected here. Given the substantive symmetry between the Synkoloid Asbestos Actions and the Adversary Proceeding in Muralo, and the certainty of active participation of a core group of purported-counsel agents (along with expected monitoring by the balance) in the Muralo main cases, a strong case is made that agency status of counsel for service of process in the Adversary Proceeding would seem to be "implicitly authorized." *In re Reisman*, 139 B.R. at 801. Consider, once more, the import of the text of Notices of Appearance described hereinabove.

In fact, in a mass tort case such as this, the retention of counsel by large numbers of claimants of necessity defines a broad scope of representation. Extension of that representation to substantively related bankruptcy proceedings would seem to be both expected and essential given the general history of asbestos mass tort and resulting bankruptcy proceedings. In order to be feasible, that retention must allow the attorney certain discretion to act without the need to solicit numerous periodic individual client authorizations. Thus, though no Objector has seen fit to provide this court with any form of retainer agreement so that the breadth of representation can be examined, this court is satisfied that Baron & Budd, as well as other responsible counsel, well anticipated the potential for substantial bankruptcy interfacing when they undertook representation of these clients. And, the clients would reasonably expect (and thus impliedly authorize) service of asbestos/bankruptcy pleadings to be directed to counsel.[7]

### Notices of Appearance

A review of the seven[8] appearance submissions filed to date in Muralo reflects the realities of the attorney-client relationship in asbestos-bankruptcy cases. These attorneys represent between 41,000 and

7. For those Synkoloid Asbestos Plaintiffs represented by counsel who, in turn, have been retained by one or only a few such claimants, the scope of retentions would seem to be no less broad than those of Baron & Budd. In the marketplace, such counsel with single or very limited Synkoloid case inventories (whether large firms or single practitioners) compete with Baron & Budd and other "mass mass tort" representatives. Client expectations as to complete representation (including related bankruptcy proceedings) would be the same. The level of activity of a small firm in a distant bankruptcy court might, of course, be more limited (*i.e.* to filing of a Notice of Appearance and eventually a Proof of Claim), but monitoring of the bankruptcy case would surely be expected. Moreover, participation in pertinent adversary proceedings would logically be accomplished through some pooling arrangements, perhaps with one of the larger firms or otherwise through local counsel. In any event, to the extent that neither counsel nor client anticipated counsel's participation in or monitoring of bankruptcy proceedings (an unlikely scenario in this court's view), recourse is available. In this regard note, by way of example, the Committee's proposed form of order.

8. This includes Williams Bailey, LLP, said to represent 610 claimants (but not found by this court in the docket), and Steven R. Penn, Esq., who represents one claimant. Mr. Penn was not referenced by Debtors in their submissions, probably because he represents a claimant whose asbestos claim is *not* based upon exposure to the Synkoloid product.

49,000 asbestos claimants/defendants.[9] All Notices of Appearance reference the "party in interest" rights to be "heard on any issue in a case under [chapter 11]." 11 U.S.C. 1109(b).

A number of the filed forms (see, e.g., docket entries 21, 66 and 92) are identical. Initially, they refer to notices and pleadings to be provided per FED. R. BANKR.P. 2003, 3017 and 9007 and 11 U.S.C. 342 and 1109(b). Then there is the following familiar language:

> Please take further notice that, pursuant to 11 U.S.C. § 1109(b), the foregoing demand includes not only the notices and papers referred to in the Bankruptcy Rules and sections of the Bankruptcy Code specified above, but also includes, without limitation, any notice, application, complaint, demand, motion, petition, *pleading* or request, whether formal or informal, written or oral, and whether transmitted or conveyed by mail, delivery, telephone, telecopier, or otherwise filed or made with regard to the above case. [Emphasis added.]

This notice and demand should not be construed as a waiver of any clients' rights to have final orders in non-core matters entered only after de novo review by the District Court, right to trial by jury in any matter so triable, withdrawal of reference where appropriate, or of any other rights at law or in equity.

Other appearances (see, e.g., docket entry 30) come even closer to a verification of authorization of agent status for service (as to "pleadings"), to wit:

> PLEASE TAKE NOTICE, that pursuant to Bankruptcy Rule 9010(b), numerous asbestos personal injury tort claimants represented by [Counsel] by and through their counsel ... hereby appear in the above-captioned case and requests that all notices and all papers served or required to be served in this case be given to and served upon the following:
>
> [Counsel]
>
> PLEASE TAKE FURTHER NOTICE that the foregoing request includes notices and papers referred to in Bankruptcy Rule 2002 and also includes, without limitation, any plan of reorganization and objections thereto, notices of any order, *pleadings*, motions, applications, complaints, disclosure statements, answering or reply papers, memoranda and briefs in support of any of the foregoing, and any other documents brought before this Court with respect to these proceedings. [Emphasis added.]

Yet another form (docket entry 103) includes a statement of contingent-fee retention by some 951 named asbestos claimants, and reference to their pending lawsuits (but no addresses for the claimants). The form culminates as follows:

> WHEREFORE, claimants most respectfully request from this Honorable

---

**9.** The distribution of representation of Synkoloid Asbestos Plaintiffs among those appearing counsel is said by Debtors to be as follows:

| | | | accurate number) |
|---|---|---|---|
| Baron & Budd, P.C.* | 22,854 | Silber Pearlman, LLP* | 9,791 |
| Foster & Sear, L.L.P.* | Between 6,679 and 14,894 (with Foster & Sear asserting the lower and thus in greatest probability more | Brayton & Purcell* | 1,162 |
| | | Williams Bailey, LLP | 610 |
| | | Wilentz, Goldman & Spitzer* | 45 |

The (*) indicates *representation of members* of the Muralo Asbestos Creditors' Committee; also representing a member is Kazan, McClain, et al, whose total representation of Synkoloid Asbestos Plaintiffs is said to be 215.

Court to take notice of the above, and order that it be included in the master address list of the above-captioned case and that copies of all motions, orders or pleadings filed herein by any party be served upon it as indicated.

By way of comparison and contrast, counsel representing but one asbestos claimant identified the state court proceeding pending on behalf of his client, and then requested: "please add [counsel] to any and all service lists relative to this matter." *See* docket entry 98.

It is anticipated that Notices of Appearance will proliferate *sub judice*.

### FED. R. BANKR.P.2019

■ Rule 2019(a) requires entities, *including counsel*, who would represent in a chapter 11 case more than one creditor, to file a verified statement listing those creditors. *See In re Oklahoma P.A.C. First Ltd. Partnership*, 122 B.R. 387, 390–91 (Bankr.D.Ariz.1990) ("[The rule] is designed to foster the goal of reorganization plans which deal fairly with creditors and which are arrived at openly. Rule 2019 covers entities which act in a fiduciary capacity but which are not otherwise subject to the control of the court") (quoting 8 COLLIER ON BANKRUPTCY ¶ 2019.03, pp. 2019–3 to 2019–5 (15th ed.1989)); *In re CF Holding Corp.*, 145 B.R. 124, 126 (Bankr. D.Conn.1992).[10] In fact, Foster & Sear,

LLP, has filed, along with its Notice of Appearance in this case, such a statement naming 6,679 Synkoloid Asbestos Claimants as clients. That filing should be deemed conclusive, thus impeaching for would-be service purposes the ARTRA-derived list of 14,894. And, as to those 6,679 named claimants, the filed counsel's statement is a strong indicator of agent status for service of initial process. The same is true of Wilentz, Goldman & Spitzer regarding their Rule 2019 submission naming forty-one clients, and Brayton & Purcell, naming 951 clients in its filing.

As with the Notices of Appearance, more Rule 2019 filings are anticipated. Indeed, if all of the attorneys who have already appeared had promptly filed the necessary statements, the listing of 41,000 to 49,000 defendants *purported* via AR-TRA's database to be represented by them could have now been "cleansed." This has been the case with Foster & Sear, LLP, as well as Wilentz, Goldman & Spitzer, and Brayton & Purcell, where ready-made lists of representation are currently available to Debtors.[11]

### *Burden on/Benefit to Debtors*

Debtors claim that they are relatively new to the process of defending asbestos actions and claims. This appears to be the case, given ARTRA's indemnification and defense undertakings prior to its June 3, 2002 bankruptcy filing.

---

**10.** A properly filed statement under FED R. BANKR P. 2019, including those filed by attorneys, should indicate the relationship between the filing entity and the creditors named in the submission. *Reid v. White Motor Corp.*, 886 F.2d 1462, 1471 (6th Cir.1989) ("Pursuant to Bankruptcy Rule 2019, a purported agent must file a verified statement with the clerk of the bankruptcy court") *cert. den.*, 494 U.S. 1080, 110 S.Ct. 1809, 108 L.Ed.2d 939 (1990); *In re Great Western Cities, Inc.*, 107 B.R. 116, 120 n. 16 (N.D.Tex.1989) ("Rule 2019 requires agents to file a verified statement explaining the circumstances of their agency."). *Accord In re Trebol Motors Distrib.*

*Corp.*, 211 B.R. 785, (Bankr.D.P.R.1997) *aff'd*, 220 B.R. 500 (1st Cir. BAP 1998); *cf. In re Ionosphere Clubs, Inc.*, 101 B.R. 844, 851–52 (Bankr.S.D.N.Y.1989).

**11.** It should be noted that, like Foster & Sear, LLP representation, the Wilentz, Goldman & Spitzer submission is at variance with Debtors' input (forty-one names listed by counsel versus forty-five thought to be represented per Debtors), as is that of Brayton & Purcell (951 names listed by counsel versus 1,162 per Debtors).

Without addresses, the data-gathering process necessary to initiate service to 60,000 defendants—even by mail—is daunting. Service upon seventy-six attorneys is plainly efficient and inexpensive from Debtors' perspective. To the extent that the manner of service by order of this court is discretionary, equitable considerations weigh against overburdening Debtors in bankruptcy with costly service methods when a reasonable and lawful alternative exists. In and of itself, however, this heavy burden on Debtors does not support the factual analysis necessary for implying authority on counsel to accept service. Nevertheless, it does tend to counterbalance a healthy reluctance to engage in any analysis which would imply such agency. Good and practical reason persists here to overcome the sparing consideration of the concept.

### Burden on/Benefit to the Purported Counsel Agents

Objectors do not argue that service on counsel will burden them. This court sees no such burden; there is, in fact, an *administrative* benefit to defendants' counsel, arising from the singular service. Chaos could well be anticipated *among the defendants* when thousands of service efforts (with varying results in terms of actuation and time of effectiveness) are initiated. Of course, *litigation tactics* in opposing purported counsel-agent service might be at work among segments of this large and diverse group of Synkoloid Asbestos Plaintiffs' counsel. Whether such tactics carried to the point of unreasonably impairing service of process offend the spirit, if not the letter, of FED.R.CIV.P. 4(d) ("Waiver of Service; *Duty to Save Costs of Service;* Request to Waiver") (emphasis added), is not for current consideration. Rather, Committee counsel has responsibly and professionally fostered discussion of a workable service methodology.

### Actuality, Quality and Content of Notice

In a mass tort case such as this, with what appear to be well-defined representation rolls, this court believes that service on counsel could well be "better" in substantive terms (not just "administratively") than certain other individualized service alternatives. Mail to individuals, for example, is subject to all of the delivery vicissitudes that put *actual* notice in question. Moreover, some served defendants might not be diligent in forwarding Summons and Complaint (with service data, *i.e.*, date and time of service) to counsel. And, that transmission is at the expense of the client.

By any reasonable assessment, service on responsible counsel will center them in the chain of service, will position them to be certain of the time available to file responsive pleadings, will avoid possible upset in defendants' households when individuals are served directly, and will allow counsel to take the initiative with clients to avoid misunderstanding at outset as to the import of the served papers.

This court is mindful that (i) this motion is brought early in these chapter 11 cases and without input from the majority of the seventy-six (or eighty) counsel who would be served; (ii) the best information available as to claimants and their counsel is from the ARTRA case, but in covering 60,000 or so claims, that database is likely to have some degree of error; (iii) the claim volume will inevitably impact on the actuality of notice in certain circumstances; (iv) there could be counsel among the group who represent one or but a few Synkoloid Asbestos Claimants, and this court's more global references to scope of retention might be less applicable to those attorneys' relationships with their claimant-clients; (v) representation changes from time to time, with clients

moving along to other counsel (or none); (vi) clients can become "lost," even to their lawyers, so that actual contact fails; and (vii) other unanticipated events could develop which would render service on purported counsel-agents less than satisfactory. These significant concerns are inherent in mass tort litigation generally. They can be dealt with both incrementally[12] and in a well-crafted implementing counsel-service order. (Such an order would apply whether "implied agency" were the basis for permitting service on counsel, or this court should designate counsel as agents for service without the necessity of determining *actual* agency status.)

The form of any such implementing order has, of course, been approached by the Committee in its submission. So long as reasonable recourse to this court is allowed, changes in representation, the "lost" client contact, outright errors in the ARTRA client lists, and other like problems can be adjusted. Provision can then be made for other modes of service. Similarly, other specific objections to service can be raised, on a case-by-case basis.

### Court–Designated Agents for Service

Also at issue is whether this court may, under these circumstances, designate the purported counsel-agents as agents for service of process, even if their actual/implied agent status is not established. In this regard FED.R.CIV.P. 4(e)(1), incorporated into FED. R. BANKR.P. 7004(a), provides:

**(e) Service Upon Individuals Within a Judicial District of the United States.** Unless otherwise provided by federal law, service upon an individual from whom a waiver has not been obtained and filed, other than an infant or an incompetent person, may be effected in any judicial district of the United States:

(1) pursuant to the law of the state in which the district court is located, or in which service is effected, for the service of a summons upon the defendant in an action brought in the courts of general jurisdiction of the State;

Service as thus allowed would include N.J.R. 4:4–4(b)(3), which provides:

4:4–4. Summons; Personal Service; In Personam Jurisdiction Service of summons, writs and complaint shall be made as follows:

\* \* \*

(b) Obtaining In Personam Jurisdiction by Substituted or Constructive Service.

\* \* \*

(3) *By court order.* If service can be made by any of the modes provided by this rule, no court order shall be necessary. If service cannot be made by any of the modes provided by this rule, any defendant may be served as provided by court order, consistent with due process of law. [Emphasis added.]

Due process, in terms of full, timely, and effective notice, will surely be well-attended to through service upon counsel; personal jurisdiction here is, as set forth earlier, not a function of any necessary minimum contacts; rather nationwide jurisdiction persists in this court. And, the Synkoloid Asbestos Plaintiffs will be pres-

---

**12.** Those counsel who appear are expected to file Rule 2019 information; as filings develop, much of the current guesswork should be removed from the representation question. To the extent that Debtors are left with AR-TRA-derived names of claimants who are not so spoken for by counsel, Debtors must develop other techniques to definitize this creditor body.

ent here as claimants. Therefore, they are, in this court's view, best served (literally) by designation of their broadly retained and active counsel as their agents for service. Much of the same factors supporting the implied agency status of counsel, impel the designation of counsel as agents for service of process.

New Jersey views court-directed service as a "gap filler," ordered "where service cannot be effected [by other service rule provisions]—so long as the order is consistent with due process of law. The utility of such a provision is significant in circumstances where usual modes of service are either impossible or unduly oppressive upon the plaintiff or where the defendant successfully evades service." PRESSLER, CURRENT N.J. COURT RULES, Comment 12, N.J.R. 4:4–4 (GANN). *See generally Feuchtbaum v. Constantini,* 59 N.J. 167, 280 A.2d 161 (1971); *Houie v. Allen,* 192 N.J.Super. 517, 471 A.2d 429 (App.Div. 1984); *Muntz v. Smaily,* 118 N.J.Super. 80, 286 A.2d 515 (App.Div.1972); *Ledbetter v. Schnur,* 107 N.J.Super. 479, 259 A.2d 237 (Law Div.1969); *Rudikoff v. Byrne,* 101 N.J.Super. 29, 242 A.2d 880 (Law Div. 1968).

### CONCLUSION

Service on counsel for the Synkoloid Asbestos Plaintiffs, in the Adversary Proceeding as to initial process, is appropriate under the extraordinary circumstances of this mass tort case. That service would satisfy the *Mullane* standard of due process in every substantive particular. Inevitable service difficulties—indeed expected,

but as aberrations in the 60,000 claimant database—can be ameliorated by a "recourse" form of implementing order. That order can include a mechanism by which the served counsel-agent will be able to notify Debtors' counsel of mistakes; [13] disputes as to purported mistakes, and special circumstances as defined by such counsel, may be brought before this court. If the agent status is withdrawn after consideration here, then in those few exceptional cases alternate forms of service can be developed. A bar date beyond which service on counsel-agents (if not the subject of a notice of error or application to this court) shall be deemed conclusive, should also be formulated.[14]

As a general matter, interface with bankruptcy is both anticipated by and inherent in counsels' undertaking of these asbestos mass tort cases. *Sub judice,* counsels' representation (directly or through a correspondent-surrogate) in the Adversary Proceeding is a foregone conclusion, given the identity of the basic issues in that proceeding with the "successor liability" threshold issues embedded in every Synkoloid Asbestos Action. Such involvement of counsel is reasonably expected by the client and encompassed in the retention authorizing each client's Synkoloid Asbestos Action.

Debtors are not in a position readily to effect service on the individual defendants. On the other hand, counsel to be served are both not burdened by service upon them, and should derive benefit from such efficient and unitary notice. Their clients will receive good notice of the Adversary

---

**13.** Since prompt (if not accelerated) submission of the required Rule 2019 statements will help upgrade basic data, the implementing order should provide for such filings.

**14.** Such a bar date could impact on certain late-raised service and related defenses, *see* FED. R. BANKR.P. 7012(b) and FED.R.CIV.P. 12(b)(2)(4)(5), though not necessarily affecting assertions of due process violations.

Proceeding without the hassle and surprise of direct service, and the need to remit papers to their asbestos counsel.

Counsel for defendants will undoubtedly at least monitor Debtors' chapter 11 cases and, as set forth above, will inevitably appear (either directly or by appointing a representative attorney) in the Adversary Proceeding. Forcing expensive and impractical individual service could result in chaos, and will certainly cause delay and expense. It would unduly honor form by invoking principles of due process which are unoffended by service on these agents.

Subject to the limiting factors set forth in the next paragraph, counsel to defendants here are the designated agents for initial service in the Adversary Proceeding. Their agent status is reasonably to be implied from their retention in asbestos mass tort litigation and its linkage to the continuum of proceedings developing after the Synkoloid Asbestos Actions, now culminating in the Adversary Proceeding. Though implied rather than expressed, counsels' authority as agents for service is *actual.* In the alternative, even if agency status cannot be so implied, the extraordinary circumstances of this case warrant court-ordered designation of counsel as agents for service of initial process. Due process is, again, satisfied by such substituted service. FED.R.CIV.P. 4(e)(1), incorporated into FED. R. BANKR.P. 7004(a), invites service by such designation through N.J.R. 4:4–4(b)(3).

This court *limits* its finding and designation of agent status for service of initial process, as follows:

(i) The defendant to be served through counsel must be a party-plaintiff in a Synkoloid Asbestos Action;

(ii) The Synkoloid Asbestos Action (in which defendant is a plaintiff) must name in that state court case, or otherwise reasonably identify in such case, a Debtor as a potentially liable entity; [15] and

(iii) Counsel to be served must *currently* represent the subject defendant in a Synkoloid Asbestos Action qualifying under (i) and (ii) above.

A form of implementing order should be promptly developed by Debtors' counsel in consultation with the Objectors, allowing for recourse and other provisions described above.[16] Any remaining dispute as to the form of order will be settled by this court upon its review of competing proposals.

15. Identification shall so qualify if it be "Synkoloid, a Division of Muralo" or any other reasonable indication of an assertion of liability of either Debtor.

16. Significant issues remain to be addressed in the implementing order. Among the subjects introduced by Debtors on July 15, 2003, was the extent to which agent-counsel could be required to participate in the data-gathering process which would upgrade the ARTRA relied–upon database. Much of Debtors' late requests are beyond the scope of this motion, some more properly the subject of future motion practice. On the other hand, reasonable implementation of the immediate agent status determination (in terms of service methodology and dispute resolution mechanics) must be included in any implementing order.